Cite as 2023 Ark. App. 123

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-22-234

| | |
|---|---|
| ALTICE USA, INC., D/B/A SUDDENLINK COMMUNICATIONS<br>APPELLANT | Opinion Delivered March 1, 2023 |
| | APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. 10CV-21-79] |
| V. | |
| WILLIAM CAMPBELL<br>APPELLEE | HONORABLE C.A. BLAKE BATSON, JUDGE |
| | REVERSED AND REMANDED |

**WAYMOND M. BROWN, Judge**

The appellant, Altice USA, Inc., does business in Arkansas as Suddenlink Communications (Suddenlink). Suddenlink provides cable television, internet, and telephone services to subscribing customers throughout Arkansas. Appellee William Campbell filed a complaint in the Clark County Circuit Court alleging that he was entitled to damages on claims of breach of contract and violations of the Arkansas Deceptive Trade Practices Act.

Suddenlink unsuccessfully moved to compel arbitration in circuit court, and pursuant to Arkansas Code Annotated section 16-108-228[1] and Rule 2(a)(12) of the Arkansas Rules

---

[1](Repl. 2016).

of Appellate Procedure–Civil, it now takes this appeal. As we do in four other cases that we decide today on similar facts, we reverse and remand.[2]

## I. *Factual Background*

Mr. Campbell subscribed to Suddenlink's cable television service. On June 14, 2021, he filed a complaint alleging that he "has never signed or received any written contract or agreement from Suddenlink," and he "pays for a month [of cable television service] in advance each time he receives a bill[.]" Mr. Campbell said that he paid each bill promptly upon receiving it in the mail but was not timely credited for several payments and was subject to unwarranted fees for late payments. He additionally alleged that he had difficulty contacting customer service and was charged for services for which he never subscribed. On the basis of these and other facts, Mr. Campbell asserted that he was entitled to compensation for Suddenlink's alleged violations of the Arkansas Deceptive Trade Practices Act and Arkansas Code Annotated section 4-88-201 (providing for enhanced penalties for deceptive trade practices directed toward persons over sixty years old) and unjust enrichment.

Suddenlink moved to compel arbitration on July 21, 2021. Suddenlink relied on the signed installation work order and payment of monthly invoices to argue that it had a valid arbitration agreement with Mr. Campbell. Specifically, it said that Suddenlink employees performed repair and installation services at Mr. Campbell's residence on October 9, 2019,

---

[2]*See Altice USA, Inc. v. Johnson*, 2023 Ark. App. 120; *Altice USA, Inc. v. Peterson*, 2023 Ark. App. 116; *Altice USA, Inc. v. Francis*, 2023 Ark. App. 117; *Altice USA, Inc., v. Runyan*, 2023 Ark. App. 124.

whereupon he signed a work order acknowledging that he had read and agreed to the general terms of service that the technician provided during the appointment. In addition to the signed work order, Suddenlink offered the affidavit of David Felican, the supervisor of customer care at Altice USA, who explained Suddenlink's routine business practice requiring the technician to present a mobile device to the customer and to obtain the customer's signature acknowledging the services performed and agreeing to the terms of service. Mr. Felican said that at the conclusion of the appointment on October 9, Mr. Campbell signed a mobile screen that stated the following:

> BY SIGNING BELOW, CUSTOMER ACKNOWLEDGES THAT ALL INFORMATION ON THIS WORK ORDER . . . AND GENERAL TERMS AND CONDITIONS OF SERVICE PROVIDED DURING THE TIME OF SERVICE APPOINTMENT AND AVAILABLE AT SUDDENLINK.NET/SERVICEINFO, HAS BEEN READ AND AGREED TO.

Suddenlink also argued that Mr. Campbell manifested his acceptance of the Residential Service Agreement (RSA) "by continuing to receive, accept, and pay for the services that Suddenlink provided under the terms and conditions." To that end, Suddenlink offered proof that Mr. Campbell paid invoices from June 2019 to June 2021 that contained the link to Suddenlink's website and language explaining that his payment confirmed his acceptance of the RSA.

Mr. Campbell responded to the motion for arbitration on July 22, 2021. Mr. Campbell denied that he agreed to arbitrate his disputes with Suddenlink. He insisted that "there is no written agreement to arbitration between the parties," and he "never signed any written agreement or contract with Suddenlink." Mr. Campbell also argued, in any event,

3

that "even if [Suddenlink] could produce evidence that [he] agreed to [Suddenlink's] website terms, those terms do not constitute a contract and the terms [of] the arbitration provision are unconscionable and unenforceable."

On December 2, 2021, the circuit court entered an order denying Suddenlink's motion to compel arbitration. Suddenlink now appeals this order, arguing that Mr. Campbell manifested his agreement to the arbitration provision when he signed the installation work order or, alternatively, when he paid his monthly bill that confirmed his acceptance of the terms of the RSA. Suddenlink further contends that Mr. Campbell's claims clearly fall within the scope of the arbitration provision, which "is intended to be broadly interpreted," and applies to "any and all disputes between [the subscriber] and Suddenlink."

Mr. Campbell responds that the circuit court did not err when it denied Suddenlink's motion to compel arbitration. First, he insists that he had no reason to believe that he was under contract with Suddenlink because the provider routinely advertises that it offered its services on a "no contract" basis. Even so, Mr. Campbell contends that his signature on the work order does not manifest his assent to any terms and conditions of his service because none are provided on the work order itself. Mr. Campbell further asserts that his payment of his monthly bills falls short of manifesting his assent because they, too, are not contracts. According to Mr. Campbell, the bills say nothing about arbitration and otherwise "fail to explain the basis for Suddenlink's charges," and "they do not impose any obligation on Suddenlink." He also suggests, in any event, that the RSA's merger clause prohibited

4

Suddenlink from using the work order or the invoices to prove that he manifested his assent to arbitration.

Mr. Campbell alternatively argues that even if he manifested his assent to the RSA, the arbitration clause is unenforceable for several reasons. First, he contends that the RSA as a whole lacks mutuality of obligation because it reserves to Suddenlink "the right to unilaterally change any portion of the terms at any time," and imposes a host of obligations on subscribers that it does not also impose on Suddenlink. The arbitration clause itself also lacks mutuality of obligation because, according to Mr. Campbell, Suddenlink may bypass arbitration in favor of charging late fees, terminating service, and referring accounts to collection agencies to remedy overdue payment for its services. Mr. Campbell also suggests that the arbitration clause is procedurally and substantively unconscionable and that the arbitration provision is in violation of Arkadelphia's franchise ordinance, which he claims "does not provide for arbitration."

## II. *Standards of Review*

"Arkansas strongly favors arbitration as a matter of public policy" because it is "a less expensive and more expeditious means of settling litigation and relieving docket congestion."[3] We review denials of motions to compel arbitration "de novo on the record."[4] That generally means that this court "is not bound by the circuit court's decision, but in the

---

[3]*Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, at 2, 598 S.W.3d 1, 4.

[4]*Id.* at 3, 598 S.W.3d at 4.

absence of a showing that the circuit court erred in its interpretation of the law, this court will accept its decision as correct on appeal."[5]

Arbitration agreements are governed by the Federal Arbitration Act (FAA), which makes them "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[6] "The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms," and "any doubts and ambiguities will be resolved in favor of arbitration."[7]

In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered.[8] The first question is whether there is a valid agreement between the parties.[9] If such an agreement exists, the second question is whether disputes fall within the scope of the agreement.[10]

"When deciding whether the parties agreed to arbitrate a certain matter, ordinary state-law principles governing contract formation apply."[11] "In Arkansas, the essential

---

[5]*Erwin-Keith, Inc. v. Stewart*, 2018 Ark. App. 147, at 9, 546 S.W.3d 508, 512.

[6]*Jorja Trading*, 2020 Ark. 133, at 3, 598 S.W.3d at 4 (quoting 9 U.S.C. § 3).

[7]*Id.* (internal citations and quotation marks omitted).

[8]*Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, at 7, 485 S.W.3d 669, 674.

[9]*Id.*

[10]*Id.*

[11]*Id.* at 3, 598 S.W.3d at 4–5.

6

elements of a contract are: (1) competent parties; (2) subject matter; (3) consideration; (4) mutual agreement; and (5) mutual obligations."[12]

### III. *Discussion*

### A. Agreement to Arbitrate

Suddenlink first argues that the circuit court erred by denying its motion to compel arbitration because it demonstrated that it had a valid agreement to arbitrate with Mr. Campbell. Specifically, Suddenlink contends that Mr. Campbell manifested his assent when he signed an installation work order acknowledging that he read and agreed to Suddenlink's terms of service. We agree.

"[I]t is well settled that in order to make a contract there must be a meeting of the minds as to all terms[.]"[13] That is, "both parties must manifest assent to the particular terms of the contract."[14] A party's manifestation of assent to a contract is judged objectively and may be proved by circumstantial evidence."[15]

In particular, "a party's manifestation of assent to a contract may be made wholly by spoken words or by conduct."[16] "[P]arties may become bound by the terms of the contract

---

[12]*Id.* at 4, 598 S.W.3d at 5.

[13]*Alltel Corp. v. Sumner*, 360 Ark. 573, 576, 203 S.W.3d 77, 80 (2005).

[14]*Id.*

[15]*Childs v. Adams*, 322 Ark. 424, 433, 909 S.W.2d 641, 645 (1995) (internal citation omitted).

[16]*Id.*

7

even if they do not sign it," in other words, "if their assent is otherwise indicated, such as by the acceptance of benefits under the contract or by the acceptance of the other's performance."[17]   For a party to assent to a contract, however, "the terms of the contract, including an arbitration agreement, must be effectively communicated."[18]

As recounted above, Suddenlink offered proof that the terms in the RSA were communicated to Mr. Campbell and that he manifested his assent with his signature on the October 9, 2019, work order.   There, Mr. Campbell's signature immediately followed boldface language saying that "[b]y signing below, customer acknowledges that all information on this work order . . . and *general terms and conditions of service provided during* [*the*] *time of* [*the*] *service appointment* and available at Suddenlink.net/serviceinfo, *has been read and agreed to*."  (Emphasis added.)  Mr. Campbell notably did not offer proof disputing that he signed the work order.[19]

Suddenlink also offered proof that "Suddenlink's Residential Service Agreement, as it appeared on Suddenlink's website, is among the general terms and conditions of service" that, with his signature, Mr. Campbell acknowledged that he was provided during the appointment, that he read, and to which he agreed.  Suddenlink proved, moreover, that the

---

[17]*Asbury Auto. Grp., Inc. v. McCain*, 2013 Ark. App. 338, at 6.

[18]*Erwin-Keith, Inc.*, 2018 Ark. App. 147, at 10, 546 S.W.3d at 513.

[19]Mr. Campbell's express acknowledgement that he "read and agreed to" the terms and conditions suffices to address his claim that Suddenlink's "no contract" offers left him unaware of his obligations under the RSA.

RSA contained a provision for binding arbitration. In light of the foregoing evidence, we hold that Mr. Campbell manifested his assent to arbitration.

We are not persuaded by Mr. Campbell's argument that the work order was not competent evidence of assent because it was not included among the documents that the RSA's merger clause declared to be the "entire agreement" between Suddenlink and the subscriber. "A merger clause in a contract, which extinguishes all prior and contemporaneous negotiations, understandings, and verbal agreements, is simply an affirmation of the parol-evidence rule."[20] The parol-evidence rule, moreover, is a substantive rule that "prohibits introduction of extrinsic evidence, parol or otherwise, which is offered to vary the terms of a written agreement."[21]

Suddenlink did not offer the work order to vary the terms of the RSA but to show that the appellees assented to them in the first instance. For that reason, we reject Mr. Campbell's argument based on the RSA's merger clause and hold that he assented to the RSA by signing the installation work order.

B. Defenses to Enforcement of the Arbitration Agreement

---

[20]*Aceva Techs., LLC v. Tyson Foods, Inc.*, 2013 Ark. App. 495, at 10, 429 S.W.3d 355, 363.

[21]*Shriners Hosps. for Children v. First United Methodist Church of Ozark*, 2016 Ark. App. 103, at 4, 483 S.W.3d 825, 827.

As we indicate above, Mr. Campbell maintains that we should nonetheless affirm the order denying Suddenlink's motion to compel arbitration because the RSA as a whole, and the arbitration provision in particular, lack mutuality of obligation. We disagree.

"Mutuality of obligations means an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound."[22] "It requires that the terms of the agreement impose real liability upon both parties."[23] "[A] contract that provides one party the option not to perform his promise would not be binding on the other."[24]

We reject Mr. Campbell's challenge to the mutuality of the RSA as a whole for the same reasons that we set forth in *Altice USA v. Johnson*.[25] The arbitration provision is severable from the rest of the RSA, and the issue of the RSA's validity as a whole is a matter for the arbitrator, not this court.[26]

We are likewise not persuaded that the arbitration provision itself lacks mutuality of obligation, as Mr. Campbell also claims. As we first stated in *Peterson*,[27] the fact that

---

[22]*Jorja Trading*, 2020 Ark. 133, at 4, 598 S.W.3d at 5 (internal quotation marks omitted).

[23]*Id.*

[24]*Id.*

[25]2023 Ark. App. 120.

[26]*See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).

[27]2023 Ark. App. 116, at 9.

10

Suddenlink may use other measures to resolve disputes before resorting to arbitration, including late fees, cancellation, and collection, has no relevance to our analysis—which looks only at the terms of the arbitration agreement itself.[28] Further, as we first observe in *Johnson*,[29] those terms do not operate to shield only Suddenlink from litigation. They allow both Suddenlink and the subscriber to file their disputes in small claims court in appropriate cases, and each must otherwise submit to arbitration.

We are also unpersuaded by Mr. Campbell's contention that the arbitration agreement is procedurally and substantively unconscionable. As the appellees first argued in *Johnson*, Mr. Campbell contends that the arbitration agreement is substantively unconscionable because it prohibits class actions and non-individualized relief (relief that would affect other subscribers in addition to the subscriber that is a party to the dispute). He also asserts that the arbitration provision is procedurally unconscionable because the opt-out clause is too difficult to invoke. Finally, he suggests that the provision in the RSA that allows Suddenlink to unilaterally modify its terms makes the RSA as a whole unconscionable (if not also defeating mutuality of obligation).

As we note in the other cases we decide today, Mr. Campbell's argument regarding the unconscionability of the RSA as a whole is outside the scope of our review.[30] His claims

---

[28]*See Jorja*, 2020 Ark. 133, at 4, 598 S.W.3d at 5.

[29] 2023 Ark. App. 120, at 16.

[30]*See, e.g., Johnson*, 2023 Ark. App.120, at 17.

11

against the terms in the arbitration provision, moreover, must suffer the same fate as they did in those cases. Like the appellees there, Mr. Campbell does not point to any individualized proof that he has been (or will be) adversely affected by the class-action waiver, the clause prohibiting non-individualized relief, or the opt-out clause. Accordingly, we must reject his argument as also lacking merit.

Mr. Campbell's argument based on the franchise ordinance is also unpersuasive. While he insists that the franchise ordinance does not expressly authorize providers to enter into arbitration agreements with subscribers, he does not point to any part of the ordinance—or other authority—providing that arbitration provisions are prohibited *unless they are expressly authorized*. Mr. Campbell also does not cite any provision in the ordinance that expressly *prohibits* arbitration, either. Finally, Mr. Campbell does not explain how Ark. Code Ann. § 23-19-208, generally providing that a franchise authority may enforce customer-service standards against cable operators, is relevant to his argument based on the franchise ordinance. Therefore, we hold that this argument is without merit.

## C. Scope of the Arbitration Provision

We also agree that the circuit court erred to the extent that it denied the motion to compel arbitration because Mr. Campbell's claim was outside the scope of the arbitration provision. As we note in similar cases we also decide today,[31] the arbitration provision in the RSA is "intended to be broadly interpreted," and requires "any and all disputes arising

---

[31]*See Peterson*, 2023 Ark. App. 116, at 10; *Francis*, 2023 Ark. App. 117, at 9; *Runyan*, 2023 Ark. App. 124, at 11.

12

between [the subscriber] and Suddenlink." The provision further provides that the agreement to arbitrate "includes, but is not limited to claims arising out of or relating to any aspect of the relationship between [the subscriber and Suddenlink] whether based in contract, statute, fraud, misrepresentation, or any other legal theory[.]" The agreement also includes "claims that arose before this or any other prior agreement" as well as "claims that may arise after the termination of [the agreement to arbitrate]."

The claims in Mr. Campbell's complaint alleging unjust enrichment and violation of the Arkansas Deceptive Trade Practices Act clearly fall within the broad scope of the RSA's arbitration provision, and Mr. Campbell does not make any argument to the contrary here. Accordingly, inasmuch as the circuit court denied the motion to compel arbitration on the basis of its conclusion that Mr. Campbell's claims were outside the scope of the agreement, we must reverse.

IV. *Conclusion*

We hold that the circuit court erred by denying Suddenlink's motion to compel arbitration. Mr. Campbell manifested his agreement to Suddenlink's terms and conditions, including that he submit to binding arbitration, when he signed the installation work order. The claims that Mr. Campbell alleged in the complaint that he filed in the circuit court, moreover, are within the terms of the arbitration agreement, and the reasons that he offers here to affirm the circuit court's ruling are without merit.

Reversed and remanded.

THYER and WOOD, JJ., agree.

*Husch Blackwell LLP*, by: *Laura C. Robinson*; and *McMillan, McCorkle & Curry, LLP*, by: *F. Thomas Curry*, for appellant.

*Thrash Law Firm, P.A.*, by: *Thomas P. Thrash* and *Will Crowder*; and *Turner & Turner, PA*, by: *Todd Turner* and *Dan Turner*, for appellee.