Cite as 2023 Ark. App. 116

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV-21-32

| | |
|---|---|
| ALTICE USA, INC., D/B/A SUDDENLINK COMMUNICATIONS | Opinion Delivered March 1, 2023 |
| | APPEAL FROM THE CLARK COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 10CV-20-95] |
| V. | HONORABLE C. A. BLAKE BATSON, JUDGE |
| SANDRA PETERSON | REVERSED AND REMANDED |
| APPELLEE | |

**CINDY GRACE THYER, Judge**

The appellant, Altice USA, Inc., does business in Arkansas as Suddenlink Communications (Suddenlink). Suddenlink provides cable television, internet, and telephone services to subscribing customers throughout Arkansas. Appellee Sandra Peterson filed a complaint in the Clark County Circuit Court alleging that Suddenlink broke promises it made to her at the time she subscribed for Suddenlink's services. The complaint principally claimed breach of contract and violations of the Arkansas Deceptive Trade Practices Act.

Suddenlink unsuccessfully moved to compel arbitration in circuit court, and pursuant to Arkansas Code Annotated section 16-108-228 (Repl. 2016) and Rule 2(a)(12) of the Arkansas

Rules of Appellate Procedure–Civil, it now takes this appeal. As we do in four other cases that we decide today on similar facts, we reverse and remand.[1]

I. *Factual Background*

Ms. Peterson subscribed to Suddenlink's cable television and internet services on a month-to-month basis. In a complaint she filed on July 29, 2020, Ms. Peterson alleged that she had "never signed, or received, any sort of written agreement with Suddenlink," and when she "agreed to do business" with the provider, she was promised an Amazon gift card and "$54.99 for life, no contract, for television and internet." Ms. Peterson alleged that she was charged more than the promised $54.99 and that her monthly bills otherwise contained "multiple, unexplained charges." On the basis of these and other facts, Ms. Peterson claimed that she should be awarded damages because Suddenlink violated the Arkansas Deceptive Trade Practices Act and "breached its agreement with [her]" by failing to fulfill its promises to provide the gift card and "to provide internet and telephone services for $54.99 per month, for life."

Suddenlink responded with a motion to compel arbitration on September 3, 2020. Suddenlink urged the circuit court to dismiss the complaint because Suddenlink and Ms. Peterson had a valid agreement to settle their disputes through arbitration. Suddenlink said that the agreement manifested in two ways. First, it alleged that Ms. Peterson signed a work order when a Suddenlink technician installed her television and internet services. That work order referenced "general terms and conditions of service" that the technician provided during the

---

[1]*See Altice USA, Inc. v. Johnson*, 2023 Ark. App. 120; *Altice USA, Inc. v. Francis*, 2023 Ark. App. 117; *Altice USA, Inc. v. Campbell*, 2023 Ark. App. 123; *Altice USA, Inc. v. Runyan*, 2023 Ark. App. 124.

installation appointment, and it stated that, by signing, Ms. Peterson acknowledged that she "read and agreed to" those terms and conditions. Those terms and conditions, Suddenlink said, included the provision for binding arbitration. Second, Suddenlink claimed that Ms. Peterson accepted the terms of its Residential Services Agreement (RSA) and its arbitration provision when she paid her monthly invoices from December 2019 until August 2020.

Daniel Fitzgibbon, a vice president in Altice USA's legal department, submitted an affidavit in support of Suddenlink's motion. He testified that Ms. Peterson signed a work order on December 12, 2019, that states, "just above her signature" that

> BY SIGNING BELOW, CUSTOMER ACKNOWLEDGES THAT ALL INFORMATION ON THIS WORK ORDER . . . AND GENERAL TERMS AND CONDITIONS OF SERVICE PROVIDED DURING THE TIME OF SERVICE APPOINTMENT AND AVAILABLE AT SUDDENLINK.NET/SERVICEINFO, HAS BEEN READ AND AGREED TO.

He also said that Suddenlink's "general terms and conditions of service," as referenced in the work order, "would have been provided to Ms. Peterson in connection with her installation work order in December 2019" and "are reflected in Suddenlink's standard Residential Services Agreement that was in effect at that time and currently." Mr. Fitzgibbon added that "monthly billing statements sent to [Ms. Peterson] contain a link to Suddenlink's Residential Services Agreement" and provided that payment of the bill confirmed Ms. Peterson's acceptance of the terms of the RSA. A signed copy of the installation work order as well as the RSA and the monthly invoices that Ms. Peterson paid were attached as exhibits to the Fitzgibbon affidavit.

Ms. Peterson responded that Suddenlink failed to offer proof that she agreed to arbitrate her disputes with Suddenlink. In particular, she alleged that she "never consented to any written agreement or contract with Suddenlink," and more particularly, she "never signed any written

3

agreement or contract which waived her right to seek legal remedies." She also claimed that no general terms of service were provided to her at the time of installation and the words "arbitration, agreement, or contract do not appear anywhere in the installation work order." Ms. Peterson alternatively claimed that even if an agreement to arbitrate exists, it was "unenforceable because it [was] procedurally and substantively unconscionable."

The circuit court denied Suddenlink's motion to compel arbitration in a brief order entered on December 14, 2020. Suddenlink now appeals this order, arguing that Ms. Peterson manifested her agreement to the arbitration provision when she paid monthly invoices referring her to the RSA on its website. Suddenlink also asserts that the claims that Ms. Peterson filed in circuit court are within the scope of the arbitration agreement.[2]

Ms. Peterson responds that the circuit court did not err when it denied Suddenlink's motion to compel arbitration. First, she contends that she had no reason to believe that she was under contract with Suddenlink because the provider routinely advertises that it offers its services on a "no contract" basis, and there was no proof that she assented to a written agreement to arbitrate. Ms. Peterson further argues that her payment of her monthly bills falls short of manifesting her assent because they are not contracts. According to Ms. Peterson, the bills contain only "unexplained charges which Suddenlink claims to be owed," and the bills "impose

---

[2]Suddenlink argued in its brief in support of its motion to compel that Ms. Peterson's claims were within the scope of the arbitration agreement. The circuit court did not make any specific findings—on this or any other issue—when it denied Suddenlink's motion. Nevertheless, the supreme court has held that "when a circuit court denies a motion without expressly stating the basis for its ruling, that ruling encompasses the issues presented to the circuit court by the briefs and arguments of the parties." *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, at 6–7, 437 S.W.3d 119, 123. Accordingly, we will address Suddenlink's argument regarding the scope of the arbitration agreement, as well as other issues it raised below, in this opinion.

no obligation on Suddenlink[.]" Ms. Peterson also claims that they fail to unequivocally incorporate the terms of the RSA—even if they could be considered contracts themselves. She also suggests, in any event, that the RSA's merger clause prohibited Suddenlink from using the invoices to prove that she manifested her assent to arbitration.

Ms. Peterson alternatively argues that even if she manifested her assent to the RSA, the arbitration clause remains unenforceable for several reasons. First, she contends that the RSA as a whole lacks mutuality of obligation because it reserves to Suddenlink "the right to unilaterally change any portion of the terms at any time" and imposes a host of obligations on subscribers that it does not also impose on Suddenlink. The arbitration clause itself also lacks mutuality of obligation because, according to Ms. Peterson, other terms in the RSA allow Suddenlink to bypass arbitration in favor of charging late fees, to terminate service, to refer accounts to collection agencies, and to limit the customer's ability to dispute charges. Ms. Peterson also suggests that the arbitration clause is substantively and procedurally unconscionable and, finally, that we should affirm because Suddenlink has failed to establish that its franchise agreement with the city of Arkadelphia "would allow it to force Arkadelphia citizens into arbitration."

II. *Standards of Review*

"Arkansas strongly favors arbitration as a matter of public policy" as "a less expensive and more expeditious means of settling litigation and relieving docket congestion." *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, at 2, 598 S.W.3d 1, 4. We review denials of motions to compel arbitration "de novo on the record." *Id.* at 3, 598 S.W.3d at 4. That generally means that this court "is not bound by the circuit court's decision, but in the absence of a showing that the

5

circuit court erred in its interpretation of the law, this court will accept its decision as correct on appeal." *Erwin-Keith, Inc. v. Stewart*, 2018 Ark. App. 147, at 9, 546 S.W.3d 508, 512.

Arbitration agreements are governed by the Federal Arbitration Act (FAA), which makes them "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Jorja Trading*, 2020 Ark. 133, at 3, 598 S.W.3d at 4 (quoting 9 U.S.C. § 3). "The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms," and "any doubts and ambiguities will be resolved in favor of arbitration." *Id.* (internal citations and quotation marks omitted).

In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered. *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, at 7, 485 S.W.3d 669, 674. The first question is whether there is a valid agreement between the parties. *Id.* If such an agreement exists, the second question is whether disputes fall within the scope of the agreement. *Id.*

"When deciding whether the parties agreed to arbitrate a certain matter, ordinary state-law principles governing contract formation apply." *Id.* at 3, 598 S.W.3d at 4–5. "In Arkansas, the essential elements of a contract are: (1) competent parties; (2) subject matter; (3) consideration; (4) mutual agreement; and (5) mutual obligations." *Id.* at 4, 598 S.W.3d at 5.

III. *Discussion*

A. Agreement to Arbitrate

Suddenlink first argues that the circuit court erred by denying its motion to compel arbitration because it demonstrated that it had a valid agreement to arbitrate with Ms. Peterson. Specifically, Suddenlink contends that Ms. Peterson manifested her agreement to the terms and

6

conditions in the RSA, including the arbitration provision, when she paid the monthly invoices directing her to the RSA on Suddenlink's website. We agree.

This case is controlled by our decision in *Altice USA, Inc. v. Johnson*, 2023 Ark. App. 120, which we also decide today on very similar facts. There, we held that Ms. Johnson assented to the terms and conditions in the RSA when she paid her monthly invoices, which, like the invoices at issue here, directed Ms. Johnson to the RSA on Suddenlink's website and provided that payment of her bill was confirmation of her agreement to those terms. Consequently, we apply *Johnson* here to hold that Ms. Peterson, who did not dispute paying the invoices she received from Suddenlink from December 2019 until August 2020, assented to the terms of the RSA, including the arbitration provision.

### B. Defenses to Enforcement of the Arbitration Agreement

We also hold, in light of our decision in *Johnson*, that Ms. Peterson's defenses against enforcement of the arbitration provision also lack merit. That is, *Johnson* directs our conclusion that the RSA, as it appears on Suddenlink's website, meets the FAA's requirement that arbitration provisions must be written. *See id.* at 11–12. *Johnson* also compels our holding that the absence of a signed writing does not violate a recent amendment to the statute of frauds, *see id.* at 12–13, and that the invoices were competent proof of Ms. Peterson's assent despite the RSA's merger clause. *See id.* at 11. *Johnson* also directs our conclusions that Ms. Peterson's challenges to the mutuality of obligation supporting the RSA as a whole (and its alleged unconscionability) are outside the scope of our review, *see id.* at 14–15, and Ms. Peterson's argument based on Arkadelphia's franchise agreement with Suddenlink lacks merit. *See id.* at 18.

That leaves Ms. Peterson's arguments concerning the alleged lack of mutuality of obligation in the arbitration agreement itself—which we perceive to be different from the challenge we rejected in *Johnson*—as well as the alleged unconscionability of the arbitration clause, which is dependent on our examination of the proof admitted in this particular case. We find both arguments to be without merit.[3]

### 1. *Mutuality of obligation*

As we observe in *Johnson*, "[m]utuality of obligations means an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound." *Jorja Trading*, 2020 Ark. 133, at 4, 598 S.W.3d at 5 (internal quotation marks omitted). "It requires that the terms of the agreement impose real liability upon both parties." *Id*. "[A] contract that provides one party the option not to perform his promise would not be binding on the other." *Id*.

The fact that Suddenlink may use other measures to resolve disputes before resorting to arbitration, including late fees, cancellation, and collection, has no relevance to our analysis—which looks only at the terms of the arbitration agreement itself. *See Jorja Trading*, 2020 Ark. 133, at 4, 598 S.W.3d at 5. Further, as we observe in *Johnson*, 2023 Ark. App. 120, at 16, those terms do not operate to shield only Suddenlink from litigation. The terms allow both Suddenlink and the subscriber to file their disputes in small claims court in appropriate cases,

---

[3]The breach-of-contract claim in Ms. Peterson's complaint affirms the existence of a contract with Suddenlink and, in our view, suffices to dispense with her argument based on Suddenlink's "no contract" advertising.

and each must otherwise submit to arbitration. Therefore, we find no merit to Ms. Peterson's argument alleging that the arbitration provision lacks mutuality of obligation.

## 2. *Unconscionability*

We are likewise unpersuaded by Ms. Peterson's suggestion that the arbitration agreement is procedurally and substantively unconscionable. As the appellee argued in *Johnson*, Ms. Peterson contends that the arbitration agreement is substantively unconscionable because it prohibits class actions and non-individualized relief (relief that would affect other subscribers in addition to the subscriber that is a party to the dispute). Ms. Peterson also contends that the arbitration provision is procedurally unconscionable because the opt-out clause is too difficult to invoke. Last, she suggests that the provision in the RSA that allows Suddenlink to unilaterally modify its terms makes the RSA as a whole unconscionable (if not also defeating mutuality of obligation).

As we observe in *Johnson*, Ms. Peterson's argument regarding the unconscionability of the RSA as a whole is outside the scope of our review. *See id.* at 17. Ms. Peterson's claims against the terms in the arbitration provision, moreover, must suffer the same fate as they did in *Johnson*. Like the appellee there, Ms. Peterson does not point to any individualized proof that she has been (or will be) adversely affected by the class-action waiver, the clause prohibiting non-individualized relief, or the opt-out clause. Accordingly, we must reject this argument as lacking merit.

## C. Scope of the Arbitration Provision

Suddenlink next contends the circuit court erred in denying the motion to compel arbitration when it found that Ms. Peterson's claims were outside the scope of the arbitration provision. We agree.

"In light of the policy favoring arbitration, [we] will not construe the agreement strictly but will read it to include subjects within the spirit of the parties' agreement." *Courtyard Gardens Health and Rehab., LLC v. Sheffield*, 2016 Ark. 235, at 3, 495 S.W.3d 69, 71. Further, as we say above, "doubts regarding arbitrability must be resolved in favor of arbitration." *Id.*

The arbitration provision in the RSA is "intended to be broadly interpreted" and requires "any and all disputes arising between [the subscriber] and Suddenlink" to be arbitrated. The provision further provides that the agreement to arbitrate "includes, but is not limited to claims arising out of or relating to any aspect of the relationship between [the subscriber and Suddenlink] whether based in contract, statute, fraud, misrepresentation, or any other legal theory[.]" The agreement also includes "claims that arose before this or any other prior agreement" as well as "claims that may arise after the termination of [the agreement to arbitrate]."

The claims in Ms. Peterson's complaint alleging breach of contract and violation of the Arkansas Deceptive Trade Practice Act clearly fall within the broad scope of the RSA's arbitration provision, and Ms. Peterson does not make any argument to the contrary here. Accordingly, inasmuch as the circuit court denied the motion to compel arbitration based on a conclusion that Ms. Peterson's claims were outside the scope of the agreement, we must reverse.

IV. *Conclusion*

The circuit court erred when it denied Suddenlink's motion to compel arbitration. Ms. Peterson's payment of the invoices that she received from Suddenlink, which directed her to the

RSA available on Suddenlink's website, manifested her assent to its terms, and the arbitration provision otherwise appears in writing on Suddenlink's website and is supported by mutuality of obligation. Ms. Peterson's arguments urging us to affirm, moreover, lack merit.

Reversed and remanded.

WOOD and BROWN, JJ., agree.

*Husch Blackwell LLP*, by: *Laura C. Robinson* and *Mark G. Arnold*, *pro hac vice*; and *McMillan, McCorkle & Curry, LLP*, by: *F. Thomas Curry*, for appellant.

*Thrash Law Firm, P.A.*, by: *Thomas P. Thrash* and *Will Crowder*; and *Turner & Turner, PA*, by: *Todd Turner*, for appellees.