Cite as 2023 Ark. App. 117

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-21-33

| | |
|---|---|
| ALTICE USA, INC., D/B/A SUDDENLINK COMMUNICATIONS<br><br><br><br>APPELLANT<br><br>V.<br><br><br>RONNIE FRANCIS AND DEBBIE FRANCIS<br><br>APPELLEES | Opinion Delivered March 1, 2023<br><br>APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. 10CV-20-96]<br><br><br>HONORABLE C.A. BLAKE BATSON, JUDGE<br><br><br><br>REVERSED AND REMANDED |

**CINDY GRACE THYER, Judge**

The appellant, Altice USA, Inc., does business in Arkansas as Suddenlink Communications (Suddenlink). Suddenlink provides cable television, internet, and telephone services to subscribing customers throughout Arkansas. Appellees Ronnie Francis and Debbie Francis filed a complaint in the Clark County Circuit Court alleging that they were entitled to damages for alleged breach of contract and violations of the Arkansas Deceptive Trade Practices Act.

Suddenlink unsuccessfully moved to compel arbitration in circuit court, and pursuant to Arkansas Code Annotated section 16-108-228 (Repl. 2016) and Rule 2(a)(12) of the

Arkansas Rules of Appellate Procedure–Civil, it now takes this appeal. As we do in four other cases that we decide today on similar facts, we reverse and remand.[1]

## I. *Factual Background*

The Francises subscribed to Suddenlink's internet and television services on a month-to-month basis. On July 29, 2020, they filed a complaint alleging that they "regularly experience service problems and outages," and in the last year, had lost service "dozens of times." The Francises also claimed that Suddenlink regularly imposed late fees on their account "even though [they had] made timely monthly payments[.]" They said that their monthly bill inexplicably increased seventy dollars in April 2020, and several attempts to contact Suddenlink—even through the Federal Communications Commission—were unsuccessful. They further alleged that despite their timely payments, Suddenlink disconnected their service in July 2020 without prior notice, forcing them to pay additional reconnection fees. The Francises also claimed that they never received a discount or credit to compensate them for the outages that they experienced. They asserted that, as a result, they were entitled to damages for alleged violations of the Arkansas Deceptive Trade Practices Act and for breach of contract.

Suddenlink moved to compel arbitration on September 3, 2020, claiming it had a valid arbitration agreement with the Francises. Its arguments in the *Francis* case were nearly

---

[1]*See Altice USA, Inc. v. Johnson*, 2023 Ark. App. 120; *Altice USA, Inc. v. Peterson*, 2023 Ark. App. 116; *Altice USA, Inc. v. Campbell*, 2023 Ark. App. 123; *Altice USA, Inc. v. Runyan*, 2023 Ark. App. 124.

identical to those it made in its motion to compel arbitration in *Altice USA, Inc. v. Peterson*, 2023 Ark. App. 116, which we also decide today. Specifically, Suddenlink offered proof that Ms. Francis signed an installation work order (including the same acknowledgment that she had read and agreed to the general terms and conditions that the service technician provided on an iPad or iPhone) when the Francises transferred their service to a new address on February 25, 2020. Suddenlink also argued that the Francises had confirmed their agreement to binding arbitration when they paid their monthly bills from January 2020 to July 2020, as those bills provided that payment of the bill confirmed their acceptance of the Residential Services Agreement (RSA) viewable on Suddenlink's website.

The Francises filed a response to Suddenlink's motion to compel arbitration on September 16, 2020. The Francises claimed that they never agreed to submit to arbitration and that Suddenlink had failed to offer proof—as they said it must—of any written agreement between the parties. In support of their response, Ms. Francis executed an affidavit in which she acknowledged that a technician came to their new home to transfer their internet and television service. She claimed that the technician "was there about ten minutes and then left" and that "he did not give us any paperwork of any kind." Ms. Francis also testified that she reviewed the installation work order bearing her signature but did not "remember ever seeing that document and . . . never got a copy of it." Ms. Francis concluded her affidavit by declaring that "she never agreed to arbitrate any dispute with Suddenlink," and "no one from Suddenlink has ever mentioned arbitration to me."

The circuit court denied Suddenlink's motion to compel arbitration in an order entered on December 14, 2020. Suddenlink now appeals this order, arguing that the Francises manifested their agreement to the arbitration provision when they paid monthly invoices referring them to the Residential Services Agreement (RSA) on its website. Suddenlink also asserts that the claims that the Francises filed in the circuit court are within the arbitration agreement.[2]

The Francises respond that the circuit court did not err when it denied Suddenlink's motion to compel arbitration. First, they insist that they had no reason to believe that they were under contract with Suddenlink because the provider routinely advertises that it offered its services on a "no contract" basis and because there was no proof that they assented to a written agreement to arbitrate. The Francises further contend that their payment of their monthly bills falls short of manifesting their assent because they are not contracts. According to the Francises, the bills contain only "unexplained charges which Suddenlink claims to be owed," and they "impose no obligation on Suddenlink[.]" The Francises also claim that the bills fail to unequivocally incorporate the terms of the RSA—even if they could be considered contracts themselves.

---

[2]As we do in *Altice USA, Inc. v. Peterson*, 2023 Ark. App. 116, we address Suddenlink's argument concerning the scope of the arbitration agreement because it briefed the issue below and because the circuit court did not make any specific findings in support of its denial of the motion to compel arbitration. *See Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, at 6–7, 437 S.W.3d 119, 123.

The Francises alternatively argue that even if they manifested their assent to the RSA, the arbitration clause is unenforceable for several reasons. First, they contend that the RSA as a whole lacks mutuality of obligation because it reserves to Suddenlink "the right to unilaterally change any portion of the terms at any time" and imposes a host of obligations on subscribers that it does not also impose on Suddenlink. The arbitration clause itself also lacks mutuality of obligation because, according to the Francises, other terms in the RSA allow Suddenlink to bypass arbitration in favor of charging late fees; terminating service; referring accounts to collection agencies; and limiting the customer's ability to dispute charges. The Francises also suggest that the arbitration clause is substantively and procedurally unconscionable and that Suddenlink has failed to establish that its franchise agreement with the city of Arkadelphia "would allow it to force Arkadelphia citizens into arbitration."

## II. *Standards of Review*

"Arkansas strongly favors arbitration as a matter of public policy" as "a less expensive and more expeditious means of settling litigation and relieving docket congestion." *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, at 2, 598 S.W.3d 1, 4. We review denials of motions to compel arbitration "de novo on the record." *Id.* at 3, 598 S.W.3d at 4. That generally means that this court "is not bound by the circuit court's decision, but in the absence of a showing that the circuit court erred in its interpretation of the law, this court will accept its decision as correct on appeal." *Erwin-Keith, Inc. v. Stewart*, 2018 Ark. App. 147, at 9, 546 S.W.3d 508, 512.

Arbitration agreements are governed by the Federal Arbitration Act (FAA), which makes them "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Jorja Trading*, 2020 Ark. 133, at 3, 598 S.W.3d at 4 (quoting 9 U.S.C. § 3). "The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms," and "any doubts and ambiguities will be resolved in favor of arbitration." *Id.* (internal citations and quotation marks omitted).

In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered. *Courtyard Gardens Health and Rehab., LLC v. Arnold*, 2016 Ark. 62, at 7, 485 S.W.3d 669, 674. The first question is whether there is a valid agreement between the parties. *Id.* If such an agreement exists, the second question is whether disputes fall within the scope of the agreement. *Id.*

"When deciding whether the parties agreed to arbitrate a certain matter, ordinary state-law principles governing contract formation apply." *Id.* at 3, 598 S.W.3d at 4–5. "In Arkansas, the essential elements of a contract are: (1) competent parties; (2) subject matter; (3) consideration; (4) mutual agreement; and (5) mutual obligations." *Id.* at 4, 598 S.W.3d at 5.

### III. *Discussion*

### A. Agreement to Arbitrate

Suddenlink first argues that the circuit court erred by denying its motion to compel arbitration because it demonstrated that it had a valid agreement to arbitrate with Mr. and

Ms. Francis. Specifically, Suddenlink contends that the Francises manifested their agreement to the terms and conditions in the RSA, including the arbitration provision, when they paid their monthly invoices directing them to the RSA on Suddenlink's website. We agree.

This case is controlled by our contemporaneous decision in *Altice USA, Inc. v. Johnson*, 2023 Ark. App. 120. There, we held that Ms. Johnson assented to the terms and conditions in the RSA when she paid her monthly invoices, which, like the invoices at issue here, directed Ms. Johnson to the RSA on Suddenlink's website and provided that payment of her bill was confirmation of her agreement to those terms. Consequently, we apply *Johnson* here to hold that the Francises, who did not dispute paying the invoices they received from Suddenlink from January 2020 to July 2020, manifested their assent to the terms of the RSA, including the arbitration provision.

B. Defenses to Enforcement of the Arbitration Agreement

We also hold, in light of our decision in *Johnson*, that the Francises' defenses against enforcement of the arbitration provision are without merit. That is, *Johnson* directs our conclusion that the RSA, as it appears on Suddenlink's website, meets the FAA's requirement that arbitration provisions must be written. *See id.* at 11–12. *Johnson* also compels our holding that the absence of a signed writing does not violate a recent amendment to the statute of frauds. *See id.* at 12–13. *Johnson* further directs our conclusions that the Francises' challenges to the mutuality of obligation supporting the RSA as a whole (and its alleged unconscionability) are outside the scope of our review, *see id.* at 14–15, and

that their argument based on Arkadelphia's franchise agreement with Suddenlink lacks merit. *See id.* at 18.

That leaves the Francises' arguments concerning the alleged lack of mutuality of obligation in the arbitration agreement itself, which we perceive to be the same as the challenge we rejected in *Altice USA Inc. v. Peterson*, 2023 Ark. App. 116, as well as the alleged unconscionability of the arbitration clause, which is dependent on our examination of the proof admitted in this particular case. We find both to be without merit.[3]

As we observe in *Johnson* and *Peterson*, "[m]utuality of obligations means an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound." *Jorja Trading*, 2020 Ark. 133, at 4, 598 S.W.3d at 5 (internal quotation marks omitted). "It requires that the terms of the agreement impose real liability upon both parties." *Id.* "[A] contract that provides one party the option not to perform his promise would not be binding on the other." *Id.*

The Francises' argument against the mutuality of the arbitration provision must meet the same fate as the appellee's argument in *Peterson*. As we state there, the fact that Suddenlink may use other measures to resolve disputes before resorting to arbitration, including late fees, cancellation, and collection, has no relevance to our analysis—which looks

---

[3]The breach-of-contract claim in the Francises' complaint affirms the existence of a contract with Suddenlink and, in our view, suffices to reject their argument based on Suddenlink's "no contract" advertising.

only at the terms of the arbitration agreement itself. *See Peterson*, 2023 Ark. App. 116, at 9. Further, as we observe in *Johnson*, 2023 Ark. App. 120, at 16, those terms do not operate to shield only Suddenlink from litigation. The terms allow both Suddenlink and the subscriber to file their disputes in small claims court in appropriate cases, and each must otherwise submit to arbitration. Therefore, we find no merit to the Francises' argument challenging the mutuality of obligation in the arbitration agreement.

We are likewise unpersuaded by the Francises' suggestion that the arbitration agreement is procedurally and substantively unconscionable. As the appellees first argued in *Johnson*, the Francises contend that the arbitration agreement is substantively unconscionable because it prohibits class actions and non-individualized relief (relief that would affect other subscribers in addition to the subscriber that is a party to the dispute). They also assert that the arbitration provision is procedurally unconscionable because the opt-out clause, which may save these provisions, is too difficult to invoke. Last, they suggest that the provision in the RSA that allows Suddenlink to unilaterally modify its terms makes the RSA as a whole unconscionable (if not also defeating mutuality of obligation).

As we observe in *Johnson* and *Peterson*, the Francises' argument regarding the unconscionability of the RSA as a whole is outside the scope of our review. *See Johnson*, 2023 Ark. App. 120, at 17; *Peterson*, 2023 Ark. App. 116, at 10. Their claims against the terms in the arbitration provision, moreover, must suffer the same fate as they did in *Johnson* and *Peterson*. Like the appellees there, the Francises do not point to any individualized proof that they have been (or will be) adversely affected by the class-action waiver, the clause prohibiting

9

non-individualized relief, or the opt-out clause. Accordingly, we must reject their argument as also lacking merit.

## C. Scope of the Arbitration Provision

Suddenlink next contends the circuit court erred in denying the motion to compel arbitration when it found the Francises' claims were outside the scope of the arbitration provision. We agree.

As we first observe in *Peterson*, 2023 Ark. App. 116, at 10, the arbitration provision in the RSA is "intended to be broadly interpreted" and requires "any and all disputes arising between [the subscriber] and Suddenlink" to be arbitrated. The provision further provides that the agreement to arbitrate "includes, but is not limited to claims arising out of or relating to any aspect of the relationship between [the subscriber and Suddenlink] whether based in contract, statute, fraud, misrepresentation, or any other legal theory[.]" The agreement also includes "claims that arose before this or any other prior agreement" as well as "claims that may arise after the termination of [the agreement to arbitrate]."

The claims in the Francises' complaint alleging breach of contract and violation of the Arkansas Deceptive Trade Practice Act clearly fall within the broad scope of the RSA's arbitration provision, and the Francises do not make any argument to the contrary here. Accordingly, inasmuch as the circuit court denied the motion to compel arbitration on the basis of its conclusion that the Francises' claims were outside the scope of the agreement, we must reverse.

## IV. *Conclusion*

The circuit court erred when it denied Suddenlink's motion to compel arbitration. The Francises' payment of the invoices that they received from Suddenlink, which directed them to the RSA available on Suddenlink's website, manifested their assent to its terms, and the arbitration provision otherwise appears in writing on Suddenlink's website and is supported by mutuality of obligation. The Francises' arguments urging us to affirm also lack merit.

Reversed and remanded.

WOOD and BROWN, JJ., agree.

*Husch Blackwell LLP*, by: *Laura C. Robinson* and *Mark G. Arnold*, *pro hac vice*; and *McMillan, McCorkle & Curry, LLP*, by: *F. Thomas Curry*, for appellant.

*Thrash Law Firm, P.A.*, by: *Thomas P. Thrash* and *Will Crowder*; and *Turner & Turner, PA*, by: *Todd Turner*, for appellees.

11