Cite as 2023 Ark. App. 124

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-22-236

| | |
|---|---|
| ALTICE USA, INC., D/B/A SUDDENLINK COMMUNICATIONS<br>APPELLANT<br><br>V.<br><br><br>PAM RUNYAN AND JESSE RUNYAN, PARENTS AND GUARDIANS OF J.R. (AN INCAPACITATED PERSON)<br>APPELLEES | Opinion Delivered March 1, 2023<br><br>APPEAL FROM THE CLARK COUNTY CIRCUIT COURT<br>[NO. 10CV-21-75]<br><br><br>HONORABLE C.A. BLAKE BATSON, JUDGE<br><br><br>REVERSED AND REMANDED |

**WAYMOND M. BROWN, Judge**

The appellant, Altice USA, Inc., does business in Arkansas as Suddenlink Communications (Suddenlink). Suddenlink provides cable television, internet, and telephone services to subscribing customers throughout Arkansas. Appellees Pam and Jesse Runyan filed a complaint in the Clark County Circuit Court alleging that they were entitled to damages on claims of unjust enrichment and violations of the Arkansas Deceptive Trade Practices Act.

Suddenlink unsuccessfully moved to compel arbitration in circuit court, and pursuant to Arkansas Code Annotated section 16-108-228 (Repl. 2016) and Rule 2(a)(12) of the

Arkansas Rules of Appellate Procedure–Civil, it now takes this appeal. As we do in four other cases that we decide today on similar facts, we reverse and remand.[1]

## I. *Factual Background*

The Runyans are guardians of their incapacitated daughter, J.R., who subscribed to Suddenlink's cable television services on a month-to-month basis until May 2021. On June 9, 2021, they filed a lawsuit against Suddenlink on J.R.'s behalf. In the complaint, they alleged that J.R. had subscribed to Suddenlink's cable television services "for many years," and "neither J.R., nor the [Runyans] ever signed or received any sort of written contract or agreement regarding J.R.'s cable television services." The complaint further alleged that beginning in 2020, Suddenlink substantially increased the amount due for J.R.'s cable television service. The Runyans alleged that they had difficulty contacting customer service representatives at Suddenlink and "were never provided with any satisfactory explanation for the drastic price increases." They also claimed that they never received billing credits "for the times when services were not properly provided by Suddenlink, even though [they] paid for those services in advance." As a consequence of these and other alleged facts, the Runyans asserted they were entitled to compensation based on Suddenlink's alleged violations of the Arkansas Deceptive Trade Practices Act and Arkansas Code Annotated section 4-88-201

---

[1]*See Altice USA, Inc. v. Johnson*, 2023 Ark. App. 120; *Altice USA, Inc. v. Peterson*, 2023 Ark. App. 116; *Altice USA, Inc. v. Francis*, 2023 Ark. App. 117; *Altice USA, Inc. v. Campbell*, 2023 Ark. App. 123.

(providing for enhanced penalties for deceptive trade practices directed toward persons with disabilities) and unjust enrichment.

Suddenlink filed a motion to compel arbitration on July 16, 2021. The motion alleged that "Suddenlink bills for its services a month in advance," and "[e]ach month, Suddenlink subscribers receive a billing statement which provides that payment of the subscriber's bill constitutes acceptance of the terms of Suddenlink's Residential Services Agreement." "The Residential Services Agreement," Suddenlink said, "contains [the] binding arbitration provision" set forth above. The Runyans manifested their agreement to binding arbitration, according to Suddenlink, "by continuing to receive, accept, and pay for the services that Suddenlink provided under the terms and conditions [of the Residential Services Agreement]." The disputes raised in the Runyan's complaint, moreover, fall within the scope of the arbitration agreements.

Suddenlink attached the affidavit of David Felican, the supervisor of customer care at Altice USA, to its motion to compel arbitration. Mr. Felican testified that the "monthly billing statements sent to [the Runyans] contain a reference and link to Suddenlink's General Terms of Service and Residential Services Agreement," and state that "payment of your bill confirms your acceptance of the Residential Services Agreement, viewable at suddenlink.com/terms-policy." Mr. Felican further testified that the Runyans did not opt out of "their arbitration agreements with Suddenlink," and they "regularly paid their daughter's monthly Suddenlink bills." The residential services agreement (RSA) as well as

3

the bills that the Runyans paid from June 2019 to March 2021, were attached as exhibits to Mr. Felican's affidavit.

In a response they filed on July 20, 2021, the Runyans alleged that "Suddenlink offers services with no contract" and "charges customers for services a month in advance[.]" They further alleged that they "never signed or received any contract or agreement for Suddenlink services," and the motion to compel should be denied because they "never signed any written agreement or contract with Suddenlink," including any "which would justify a waiver of their right to seek relief in a court of law." The Runyans response also claimed that they "never received any documents . . . [or] any bills from [Suddenlink]." The Runyans also pointed to the circuit court's previous denials of Suddenlink's motions to compel arbitration in related cases and additionally argued that the terms of the RSA and its arbitration language "are unconscionable and unenforceable" because they lack "reasonably certain subject matter." That is, they provide that "Suddenlink, may, in its sole discretion, change, modify, add, or remove portions of the [RSA] and notify customers by "posting notice of such changes on Suddenlink's website."

Appellee Pam Runyan executed an affidavit that appellees attached to their response. There, she testified that she is her daughter's legal guardian and, "[a]s her guardian, [she] handle[s] [her] daughter's business affairs." Ms. Runyan also stated that J.R.'s Suddenlink bill "increased drastically" in 2020 and that neither she nor J.R. signed any contract or other agreement for Suddenlink's services. Ms. Runyan further testified that she made several unsuccessful attempts to contact Suddenlink about the increased charges.

4

The circuit court heard oral argument on Suddenlink's motion to compel arbitration on October 20, 2021. During the hearing, the Runyans proffered a second affidavit from Pam Runyan in which she testified for the first time that J.R.'s group living facility "handled [her] monthly bills" and normally paid them by check. According to Ms. Runyan, the staff of the group living facility "would prepare checks for [her] daughter to sign and then [the facility] would assist [her] daughter in having those checks mailed." She further testified that "[i]n 2020, [her] daughter did not have a debit card and would not have paid any bills online," and "based on good faith knowledge and belief, my husband and I did not pay any of her bills online in 2020."

Suddenlink objected to the admission of Ms. Runyan's second affidavit, arguing that it was contrary to the allegations in the complaint, in which the Runyans claimed to have control over J.R.'s finances, and was untimely. The circuit court did not rule on Suddenlink's objection at the hearing but told Suddenlink's counsel that its order would state whether the court considered the affidavit in making its ruling.

On December 2, 2021, the circuit court entered a one-line order denying Suddenlink's motion to compel arbitration. It did not state whether the court considered the affidavit that the Runyans proffered during the hearing.

Suddenlink now appeals the circuit court's order, arguing that the Runyans manifested their agreement to the arbitration provision when they paid monthly invoices that referred them to the RSA on its website. Suddenlink also asserts that the claims that the

5

Runyans filed in the circuit court are within the arbitration agreement[2] and that the circuit court erred when it did not state in its order denying the motion to compel arbitration whether it relied on Ms. Runyan's second affidavit that Suddenlink claimed was inadmissible.

The Runyans respond that the circuit court did not err when it denied Suddenlink's motion to compel arbitration. They contend that they did not manifest their agreement to arbitration by paying their daughter's Suddenlink bills because Suddenlink routinely tells its customers that it does not require contracts. The Runyans additionally argue that the invoices they received prior to August 2019 did not contain any reference to the RSA or website, and invoices with a revised format obscured the reference to the RSA and the associated web address in small print among references to other web addresses. The Runyans also suggest that Suddenlink failed to produce a written arbitration agreement as required by the Federal Arbitration Act, or even assuming that such a writing exists, it was signed in accordance with a recent amendment to Arkansas's statute of frauds. They also contend that the invoices could not be competent evidence of their assent in any event because the invoices are not among the documents included in the RSA's merger clause.

The Runyans further argue that they did not have a valid agreement to arbitrate with Suddenlink because the monthly invoices and the RSA are not supported by mutuality of

---

[2]We address Suddenlink's argument concerning the scope of the arbitration agreement because it briefed the issue below, and the circuit court did not make any specific findings in support of its denial of the motion to compel arbitration. *See Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, at 6–7, 437 S.W.3d 119, 123.

6

obligation. The bills "do not impose any obligation on Suddenlink," and the RSA's terms "are merely a host of obligations imposed on customers." More particularly, the Runyans argue that the RSA lacks mutuality of obligation because it grants Suddenlink the right to unilaterally change its terms at any time. They also argue that the circuit court did not err by refusing to enforce the arbitration agreement because the franchise ordinance that governs Suddenlink's cable television service does not authorize "forced arbitration." Lastly, the Runyans respond that Suddenlink's challenge to Ms. Runyan's proffered affidavit is without merit.

## II. *Standards of Review*

"Arkansas strongly favors arbitration as a matter of public policy" because it is "a less expensive and more expeditious means of settling litigation and relieving docket congestion."[3] We review denials of motions to compel arbitration "de novo on the record."[4] That generally means that this court "is not bound by the circuit court's decision, but in the absence of a showing that the circuit court erred in its interpretation of the law, this court will accept its decision as correct on appeal."[5]

Arbitration agreements are governed by the Federal Arbitration Act (FAA), which makes them "valid, irrevocable, and enforceable, save upon such grounds as exist at law or

---

[3] *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, at 2, 598 S.W.3d 1, 4.

[4] *Id.* at 3, 598 S.W.3d at 4.

[5] *Erwin-Keith, Inc. v. Stewart*, 2018 Ark. App. 147, at 9, 546 S.W.3d 508, 512.

in equity for the revocation of any contract."[6] "The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms," and "any doubts and ambiguities will be resolved in favor of arbitration."[7]

In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered.[8] The first question is whether there is a valid agreement between the parties.[9] If such an agreement exists, the second question is whether disputes fall within the scope of the agreement.[10]

"When deciding whether the parties agreed to arbitrate a certain matter, ordinary state-law principles governing contract formation apply."[11] "In Arkansas, the essential elements of a contract are (1) competent parties; (2) subject matter; (3) consideration; (4) mutual agreement; and (5) mutual obligations."[12]

II. *Discussion*

A. Agreement to Arbitrate

---

[6]*Jorja Trading*, 2020 Ark. 133, at 3, 598 S.W.3d at 4 (quoting 9 U.S.C. § 3).

[7]*Id.* (internal citations and quotation marks omitted).

[8]*Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, at 7, 485 S.W.3d 669, 674.

[9]*Id.*

[10]*Id.*

[11]*Id.* at 3, 598 S.W.3d at 4–5.

[12]*Id.* at 4, 598 S.W.3d at 5.

Suddenlink first argues that the circuit court erred by denying its motion to compel arbitration because it demonstrated that it had a valid agreement to arbitrate with the Runyans. Specifically, Suddenlink contends that the Runyans manifested their agreement to the terms and conditions in the RSA, including the arbitration provision, when they paid the monthly invoices directing them to the RSA on Suddenlink's website. We agree.

This case is controlled by our decision in *Altice USA, Inc. v. Johnson*, 2022 Ark. App. 120, which we also decide today on very similar facts. In *Johnson*, we held that Ms. Johnson assented to the terms and conditions in the RSA when she paid her monthly invoices, which, like the invoices at issue here, directed Ms. Johnson to the RSA on Suddenlink's website and provided that payment of her bill was confirmation of her agreement to those terms.[13] Consequently, we apply *Johnson* here to hold that the Runyans, who did not dispute they had paid the invoices their daughter received from Suddenlink from June 2019 to March 2021,[14] manifested their assent to the terms of the RSA, including the arbitration provision.

---

[13]We think our holding in *Johnson* also suffices to address the Runyans' claim that they had no reason to believe that they were under contract due to Suddenlink's "no contract" advertising. Their reliance on a federal district court's unpublished decision, *Williams v. MetroPCS Wireless, Inc.*, No. 09-22890-CIV, 2010 WL 62605 (S.D. Fla. Jan. 5, 2010), is misplaced. The billing scheme here and in *Johnson* is distinguishable from *Williams*, where the subscriber was billed via text messages that did not refer to the subscriber agreement.

[14]Ms. Runyan's claim that she did not pay J.R.'s bills in 2020, which appeared in her second affidavit, does not change our analysis. The circuit court did not make any ruling admitting the second affidavit, and Ms. Runyan otherwise admitted in the first affidavit that she submitted that "as guardian [she] handle[s] [her] daughter's business affairs." The Runyans are also bound by the allegations in their complaint, *see DWB, LLC v. D&T Pure Tr.*, 2018 Ark. App. 283, at 18, 550 S.W.3d 420, 432, where they alleged that they are

9

B. Defenses to Enforcement of the Arbitration Agreement

We also hold, in light of our decision in *Johnson*,[15] that the Runyans' defenses against enforcement of the arbitration provision also lack merit. That is, *Johnson* directs our conclusion that the RSA, as it appears on Suddenlink's website, meets the FAA's requirement that arbitration provisions must be written.[16] *Johnson* also compels our holding that the absence of a signed writing does not violate a recent amendment to the statute of frauds[17] and that the invoices were competent proof of the Runyans' assent, despite the RSA's merger clause.[18] *Johnson* also directs our conclusions that the Runyans' challenges to the mutuality of obligation supporting the RSA as a whole are outside the scope of our review.[19]

That leaves the Runyans' argument based on Arkadelphia's franchise ordinance, which we rejected in similar circumstances in another decision we issue today, *Altice USA, Inc. v. Campbell*, 2023 Ark. App. 123. Here, as in *Campbell*, the Runyans do not point to any part of the ordinance—or other authority—providing that arbitration provisions are

---

"financially responsible for J.R.'s obligations" and "ensur[ed] that her Suddenlink bills were paid," and claimed that they never received refunds for outages, "even though [they] paid for those services in advance."

[15]2023 Ark. App. 120.

[16]*See id*. at 11–12.
[17] *See id*. at 12–13.

[18] *See id*. at 11.

[19] *See id*. at 14–15.

prohibited *unless they are expressly authorized.* They likewise fail to cite any provision in the ordinance that expressly *prohibits* arbitration. Finally, like the appellee in *Campbell*, the Runyans do not explain how Ark. Code Ann. § 23-19-208, generally providing that a franchise authority may enforce customer-service standards against cable operators, is relevant to their argument based on the franchise ordinance. Therefore, we hold that this argument is without merit.

## C. Scope of the Arbitration Provision

Suddenlink next contends that the circuit court erred to the extent that it denied the motion to compel arbitration because the Runyans' claims were outside the scope of the arbitration provision. We agree.

As we observe in similar cases we also decide today,[20] the arbitration provision in the RSA is "intended to be broadly interpreted" and applies to "any and all disputes arising between [the subscriber] and Suddenlink." The provision further provides that the agreement to arbitrate "includes, but is not limited to claims arising out of or relating to any aspect of the relationship between [the subscriber and Suddenlink] whether based in contract, statute, fraud, misrepresentation, or any other legal theory[.]" The agreement also includes "claims that arose before this or any other prior agreement" as well as "claims that may arise after the termination of [the agreement to arbitrate]."

---

[20]*See Peterson*, 2023 Ark. App. 116, at 10; *Francis*, 2023 Ark. App. 117, at 9; *Campbell*, 2023 Ark. App. 123, at 12.

11

The claims in the Runyans' complaint alleging unjust enrichment and violation of the Arkansas Deceptive Trade Practice Act clearly fall within the broad scope of the RSA's arbitration provision, and the Runyans do not make any argument to the contrary here. Accordingly, inasmuch as the circuit court denied the motion to compel arbitration on the basis of its conclusion that the Runyans' claims were outside the scope of the agreement, we must reverse.

## D. Proffered Exhibit

Suddenlink next contends that the circuit court erred when it did not state, in its order denying the motion to compel arbitration, whether it relied on an affidavit that Suddenlink claimed was inadmissible. We decline to reach Suddenlink's argument.

It is well settled that the failure to obtain a ruling on an issue constitutes a waiver of the issue on appeal.[21] According to the record, Suddenlink acquiesced to the circuit court's deferral of the admissibility of Ms. Runyan's affidavit until it issued its order on the motion to compel arbitration. After the circuit court issued the order without any indication of whether it relied on the affidavit, however, Suddenlink did not seek an amended order or otherwise request that the court clarify whether it admitted the affidavit. Accordingly, we hold that this issue is not preserved for our review.

---

[21]*Lone's RT 92, Inc. v. DJ Mart, LLC*, 2019 Ark. App. 318, at 12, 577 S.W.3d 769, 775.

IV. *Conclusion*

The circuit court erred when it denied Suddenlink's motion to compel arbitration. The Runyans' payment of the invoices that their daughter received from Suddenlink, which directed them to the RSA available on Suddenlink's website, manifested their assent to its terms, and the arbitration provision otherwise appears in writing on Suddenlink's website and is supported by mutuality of obligation. The Runyans' remaining arguments urging us to affirm also lack merit.

Reversed and remanded.

THYER and WOOD, JJ., agree.

*Husch Blackwell LLP*, by: *Laura C. Robinson*; and *McMillan, McCorkle & Curry, LLP*, by: *F. Thomas Curry*, for appellant.

*Thrash Law Firm, P.A.*, by: *Thomas P. Thrash* and *Will Crowder*; and *Turner & Turner, PA*, by: *Todd Turner* and *Dan Turner*, for appellees.