**Opinion issued April 22, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-13-00130-CV**

———————————

**NATIONAL CASUALTY COMPANY, Appellant**

**V.**

**CHARLIE HINDS PAINT & BODY, INC.**
**D/B/A CHARLIE HINDS PAINT & BODY, Appellee**

---

**On Appeal from the County Civil Court at Law No 3**
**Harris County, Texas**
**Trial Court Case No. 954708**

---

# OPINION

In four issues, National Casualty Company appeals a judgment entered after a bench trial, in which the trial court awarded damages to Charlie Hinds Paint & Body, Inc. for the storage of a wrecked tow truck, plus attorney's fees. On appeal, National Casualty contends that the trial court erred in its application of the

Vehicle Storage Facility Act, Chapter 2303 of the Texas Occupations Code, because there is insufficient evidence to support the judgment or award of damages. National Casualty also contends that the award of attorney's fees was improper, because that award depends on the underlying finding of liability. Because there is no evidence that the tow truck was ever stored against the consent of its owner, we agree with National Casualty and reverse the judgment of the trial court.

## Background

Charlie Hinds is the chief executive officer and sole shareholder of Charlie Hinds Paint & Body ("CHPB"). CHPB is an automotive paint and body shop that also operates as a vehicle storage facility and wrecker storage yard. In July 2005, a CHPB employee was driving a company tow truck, with authorization to do so, when he was involved in an accident that severely damaged the truck. CHPB carried an insurance policy on the truck, issued by National Casualty.

Immediately after the accident, another employee of CHPB towed the damaged truck to CHPB's storage lot, using another CHPB truck to do so. Hinds testified at trial that he understood this to be a "nonconsent tow" under Texas law, explaining that, in his understanding, "The state calls it a nonconsent anytime it's involved in an accident and the police department is called." The vehicle was then stored at the CHPB facility and has remained there since that time.

On or about March 7, 2006, National Casualty paid CHPB's claim on the damaged truck as a total loss, issuing a check for approximately $26,000. At that time, National Casualty sent Hinds a power of attorney form. Within a few days of receiving the form, Hinds completed it, had it notarized, and returned it to National Casualty. At the same time, he also sent the vehicle's title, endorsed to National Casualty, but the insurer has never registered the title or filed it with any governmental agency. Hinds requested that National Casualty leave the vehicle on CHPB's lot temporarily after payment of the claim, to allow him time to remove equipment from the truck. National Casualty consented to this request.

National Casualty intended to sell the tow truck as salvage. Approximately a week after paying CHPB's claim, National Casualty's agent, Insurance Auto Auctions, contacted Hinds to arrange to pick up the tow truck. Hinds informed the caller of the storage fees that CHPB had calculated as due on the truck, running from the date of the wreck, which at that time came to more than $5,184. According to Hinds, the caller responded, "I'm not paying nothing," explaining this refusal to pay the fees on the grounds that Hinds owned the vehicle. A total loss adjuster employed by National Casualty contacted Hinds on the same day, and Hinds gave that person the same figure.

The parties had no other contact related to the truck from March 2006 until February 2008, when National Casualty sued CHPB in justice court, seeking the

value of the salvage. CHPB countersued for towing and storage fees under Chapter 2303 of the Texas Occupations Code. That case was dismissed,[1] and CHPB sued National Casualty in the county court at law in January 2010, again seeking towing and storage fees. Before trial, CHPB abandoned its cause of action for towing fees.

In October 2012, the case finally proceeded to a bench trial. CHPB sought to recover more than $52,000, representing storage fees since March 7, 2006 at a rate of $20 per day and applicable taxes, plus attorney's fees. For its part, National Casualty sought $3,261.37—the monetary value of the salvage—plus attorney's fees. After a one-day bench trial, the trial court entered judgment for CHPB, awarding it $26,400.00 "as damages for storage fees," $4,200.00 in attorney's fees, post-judgment interest, and costs of court. National Casualty filed a motion for new trial, which was denied by operation of law. National Casualty timely appealed to this court.

On appeal, National Casualty presents four issues: (1) no facts exist to support the trial court's application of Chapter 2303, because the owner of the truck consented to its storage; (2) Chapter 2303 is also inapplicable because CHPB failed to provide the written notice required by that chapter that fees were accruing;

---

[1] The parties disagree as to why this happened, and the record is unclear. According to National Casualty, the justice court action was dismissed because CHPB's counterclaims exceeded the jurisdictional limits of the justice court, while CHPB claims that the case was dismissed for want of prosecution.

(3) no facts support the award of damages or the amount thereof; and (4) the trial court erred in awarding attorney's fees to CHPB.

**Analysis**

When this court reviews the legal sufficiency of evidence supporting a judgment, we consider only the evidence and inferences that tend to support the judgment, and we disregard all evidence and inferences to the contrary. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When we review the factual sufficiency of the evidence, we consider and weigh all of the evidence and will set aside the verdict only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The fact-finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* This court cannot substitute its judgment or opinion for that of the factfinder. *Id.* When the trial is to the bench, but the trial court did not issue findings of fact, we must imply all findings of fact necessary to support the judgment. *Black v. Dallas Cnty. Child Welfare Unit*, 835 S.W.2d 626, 630 n.10 (Tex. 1992) (citing *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 276 (Tex. 1979)).

I. **Preservation of error**

CHPB argues that National Casualty failed to preserve any complaints for appeal because the motion for new trial only challenged certain findings as against

5

the great weight and preponderance of the evidence. Each of National Casualty's arguments on appeal, however, challenges some aspect of the trial court's judgment because there were "no facts to support" it. These are, by definition, complaints regarding the sufficiency of the evidence. *Merrell Dow Pharms.*, 953 S.W.2d at 711; *Cain*, 709 S.W.2d at 176. "In a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence—including a complaint that the damages found by the court are excessive or inadequate, as distinguished from a complaint that the trial court erred in refusing to amend a fact finding or to make an additional finding of fact—may be made for the first time on appeal in the complaining party's brief." TEX. R. APP. P. 33.1(d); *see also Office of Atty. Gen. of Tex. v. Burton*, 369 S.W.3d 173, 175 (Tex. 2012). National Casualty was not required to preserve its points of error, and they are properly before this court.

## II.    Consent of the vehicle's owner

In its first issue, National Casualty argues that the trial court erred in applying Texas Occupations Code chapter 2303, which forms the basis for CHPB's claim and recovery. That statute, commonly known as the Vehicle Storage Facility Act, regulates the storage of towed vehicles at "vehicle storage facilities." TEX. OCC. CODE ANN. § 2303.001 (West 2012). A "vehicle storage facility" is "a garage, parking lot, or other facility that is: (A) owned by a person other than a governmental entity; and (B) used to store or park at least 10 vehicles each year."

6

*Id.* § 2303.002(8). In relevant part, the Occupations Code authorizes "[t]he operator of a vehicle storage facility" to "charge the owner of a vehicle stored or parked at the facility . . . a daily storage fee of . . . not less than $5 and not more than $20 for each day or part of a day the vehicle is stored at the facility." *Id.* § 2303.155(b). The Occupations Code also imposes liability for fees under Chapter 2303 on "[a]n insurance company that pays a claim of total loss on a vehicle in a vehicle storage facility . . . regardless of whether an amount accrued before the insurance company paid the claim." *Id.* § 2303.156(b).

Critically to this case, however, Chapter 2303 "does not apply to a vehicle stored or parked at a vehicle storage facility with the consent of the owner of the vehicle." *Id.* § 2303.003. "As such, a defendant may raise the issue of consent as a defense to actions brought under section 2303.156(b)." *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 556 (Tex. App.—Tyler 2007, pet. denied). For purposes of Chapter 2303, "owner of a vehicle" is defined in relevant part to mean "a person named as the purchaser or transferee in the certificate of title issued for the vehicle under Chapter 501, Transportation Code." TEX. OCC. CODE ANN. § 2303.002(5)(A). The essential question in this case, then, is whether the truck was ever stored at CHPB's lot without the consent of the truck's owner. *Id.* § 2303.003. That question, in turn, requires an examination of the truck's ownership history during the relevant period.

7

It is undisputed that CHPB owned the vehicle at the time of the accident, and that CHPB's own employee voluntarily towed the vehicle to CHPB's own facility.[2] There was no evidence at trial that CHPB protested, objected to, or otherwise withheld consent to storage of the vehicle at its facility at that time. Rather, the evidence was conclusive that CHPB voluntarily towed the vehicle there and actually requested that the vehicle remain on CHPB's lot even after National Casualty paid the insurance claim, so that Hinds would have additional time to remove equipment from it. Because CHPB consented to the storage of its own vehicle on its own lot from the time of the wreck until the time that CHPB mailed the vehicle's title to National Casualty, Chapter 2303 did not apply to the vehicle during that period. *Id.* § 2303.003. Indeed, CHPB did not seek damages for that time period.

---

[2] While Hinds testified that the tow was a "nonconsent tow," that term refers to the manner in which the statute authorizes *towing*, not the manner in which the vehicle's owner consents to *storage*. The term "nonconsent tow" is defined by Chapter 2308 of the Occupations Code, which governs towing and has no relevance to fees charged by a vehicle storage facility. TEX. OCC. CODE ANN. § 2308.002(6) ("'Nonconsent tow' means any tow of a motor vehicle that is not a consent tow, including (A) an incident management tow . . . ."); *see also id.* § 2308.002(3) ("'Consent tow' means any tow of a motor vehicle in which the tow truck is summoned by the owner or operator of the vehicle or by a person who has possession, custody, or control of the vehicle. The term does not include an incident management tow . . . ."). We do not need to decide whether Hinds is correct in his classification of the tow as a "nonconsent tow," as that classification has no bearing on the issues before us.

The question remaining is whether Chapter 2303 ever applied to the vehicle, such that CHPB became entitled to any storage fees thereunder. The evidence was conclusive that CHPB delivered the title to the vehicle to National Casualty in March 2006. The parties have not briefed whether this act was sufficient to make National Casualty the "owner of the vehicle" under Section 2303.002(5) of the Occupations Code, and no statutory or case law addresses this issue. But as we have already discussed, the record is clear that CHPB consented to storage of the vehicle on its own lot while it was the owner of the vehicle. Because the trial court did not issue findings of fact and could not have applied Chapter 2303 to the period in which CHPB owned the vehicle, we must imply that by rendering judgment in favor of CHPB, it necessarily found that National Casualty at some point became the owner of the vehicle. *Black*, 835 S.W.2d at 630 n.10.

The record is devoid of evidence that National Casualty ever objected to CHPB's storage of the vehicle. Rather, National Casualty only objected to the amount of fees that CHPB sought to recover. The only communications between CHPB and National Casualty from the time that the insurance claim was paid until the initiation of litigation nearly two years later were about whether CHPB was entitled to the storage fees. National Casualty never sent a tow truck to retrieve the wrecked vehicle, nor did it ever make a written or oral demand that CHPB surrender the vehicle. Hinds himself testified that he has repeatedly informed

9

National Casualty that it could "come pick up the vehicle," but National Casualty made no attempt to do so. On the contrary, National Casualty allowed CHPB to retain the truck after this time, so that Hinds could remove equipment from it. Further, other than informing National Casualty that it could claim the vehicle, CHPB took no steps to force National Casualty to retrieve the vehicle, nor did CHPB treat it as an abandoned vehicle under the Occupations Code. TEX. OCC. CODE ANN. § 2303.154(a-1) ("If a vehicle is not claimed by a person permitted to claim the vehicle before the 10th day after the date notice is mailed or published under Section 2303.151 or 2303.152, the operator of the vehicle storage facility shall consider the vehicle to be abandoned . . . .").

In short, the evidence at trial was conclusive that National Casualty consented to the vehicle remaining on CHPB's lot, even after it paid CHPB's insurance claim. There is no evidence in the record to support a finding that the vehicle was ever stored or parked at CHPB's vehicle storage facility without its owner's consent. Chapter 2303 of the Occupations Code thus never applied to the vehicle, and CHPB was not entitled to recovery under any theory based on that chapter. *Id.* § 2303.003(a). We therefore hold that the evidence was legally and factually insufficient to support the trial court's judgment.

We sustain National Casualty's first issue. Our resolution of this issue makes it unnecessary for us to reach National Casualty's second and third issues.

National Casualty's fourth argument is that the trial court erred in awarding attorney's fees to CHPB. Chapter 2303 of the Occupations Code does not allow for an award of attorney's fees to a private litigant who does not prevail in a suit to recover storage fees, and the parties identify no other possible basis for such an award. We therefore sustain National Casualty's fourth issue and reverse the judgment as to attorney's fees.

## Conclusion

Because we sustain National Casualty's first and fourth issues, we reverse the judgment of the trial court and render judgment that CHPB take nothing on its claims.

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.