Cite as 2024 Ark. App. 271

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-22-756

|  |  |
|---|---|
| WESTLAKE SERVICES, LLC<br>APPELLANT | Opinion Delivered April 24, 2024 |
|  | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>TWELFTH DIVISION<br>[NO. 60CV-22-2491] |
| V. |  |
| AMBER ENGLAND, ON BEHALF OF<br>HERSELF AND ALL OTHERS<br>SIMILARLY SITUATED<br>APPELLEE | HONORABLE ALICE S. GRAY, JUDGE<br><br>REVERSED AND REMANDED |

**ROBERT J. GLADWIN, Judge**

Westlake Services, LLC, appeals from the Pulaski County Circuit Court's September 19, 2022 order denying its motion to compel arbitration and to dismiss or stay proceedings as well as the deemed denial of its motion to amend the order denying the motion, which was timely filed on October 3.[1]

Westlake argues that (1) this case must be remanded with instructions because the order denying its motion to compel arbitration does not explain the rationale for the circuit court's decision; (2) if the court reaches the merits of the appeal, the order denying Westlake's motion to compel arbitration should be reversed because the arbitration

---

[1]Because the circuit court neither granted nor denied this motion within thirty days of the date it was filed, it was deemed denied by operation of law as of November 2, 2022, the thirtieth day from the date the motion was filed. *See* Ark. R. Civ. P. 52(b)(1) (2023); Ark. R. App. P.–Civ. 4(b)(1) (2023).

agreement is valid and enforceable under the Automobile Dealer's Anti-Coercion Act, codified at Arkansas Code Annotated sections 4-75-401 to -413 (Repl. 2023) ("ADACA"); (3) the arbitration agreement satisfies mutuality of obligations; and (4) Westlake did not waive its right to compel arbitration. We reverse and remand to the circuit court with instructions to enter an order consistent with this opinion.

## I. *Facts and Procedural History*

On April 4, 2018, appellee April England and a co-borrower signed three agreements related to the purchase of a 2004 F250 Ford Super Duty pickup truck (the "Vehicle") from nonparty Great American Auto, LLC, in Little Rock (the "Dealership"): (1) a "Retail Installment Contract and Security Agreement" (the "Contract"); (2) an "Addendum to Retail Installment Contract and Security Agreement" (the "Addendum"); and (3) a "Waiver of Purchaser's Right to Sue" (the "Arbitration Agreement"). The Contract set the price and payment terms for the Vehicle and provided the seller's remedies on default, including self-help remedies and the right to seek a deficiency judgment.

The Contract was immediately assigned from the Dealership to Westlake. The Addendum provided that the Contract would be construed and enforced in accordance with Arkansas law, except that any usury provisions shall be governed by California law.

The Arbitration Agreement, set out in a separate document titled "WAIVER OF PURCHASER'S RIGHT TO SUE," was signed by England. The Arbitration Agreement expressly provides that it is governed by the Federal Arbitration Act. It allows both England and Westlake "[t]o initiate an arbitration proceeding" by notifying the other party, in writing,

2

that the demanding party "wishes to arbitrate a Dispute." A "Dispute" within the scope of the Arbitration Agreement is defined to include

> any dispute with Dealership and/or Westlake Financial Services . . . whether based in whole or in part on contract, tort, statute, or other equitable relief, arising from or relating to: (1) the Vehicle and any products and services purchased in conjunction therewith; (2) the negotiation of and terms of the Retail Installment Sales Contract, and any other documents that are part of the transaction; (3) the application for and terms of financing for the transaction; and/or (4) any question as to whether a dispute may be arbitrated (including the interpretation and scope of this Agreement to Arbitrate).

The Arbitration Agreement contained a clause that incorporated it into the Contract:

> THIS WAIVER IS INCORPORATED BY REFERENCE INTO THE RETAIL INSTALLMENT CONTRACT AND MAY NOT BE MODIFIED OR AMENDED EXCEPT BY A SEPARATE WRITTEN AGREEMENT SIGNED BY THE BUYER(S) AND AN AUTHORIZED DEALERSHIP AND/OR WESTLAKE FINANCIAL SERVICES REPRESENTATIVE.

At its conclusion, the Arbitration Agreement contains this statement: **"By signing below, Buyer(s) specifically acknowledges Buyer's relinquishment of the right to have any dispute over the sale or operation of the Vehicle decided by a court of law, as detailed above."** (Emphasis in original.)

England defaulted on the payment obligations under the Contract. Pursuant to the terms of the Contract, Westlake repossessed the Vehicle and sent England a "Notice of Intent to Dispose of Motor Vehicle," which represented that California law applied to the repossession and disposition of the vehicle, that she had the right to redeem the repossessed collateral before disposition, and that California law required England to pay a fifteen-dollar repossession-report fee to the Little Rock Police Department to redeem the vehicle under California law.

Westlake sold the Vehicle and applied the proceeds of the sale to the balance owed under the Contract. Westlake then sued England for the deficiency in the Pulaski County District Court, Sherwood Division, requesting a deficiency judgment for $5,123.27, plus interest at the Contract rate of 21.79 percent. After Westlake served England, she appeared in the district court action and moved to dismiss Westlake's complaint because the 21.79 percent interest rate exceeds Arkansas's prohibition on interest rates exceeding 17 percent. Westlake filed a response, and other motions were filed by the parties, but England never sought to compel arbitration in the district court action. Westlake's district court action against England remains open.

On April 18, 2022, England filed a class-action complaint against Westlake in the Pulaski County Circuit Court. England's complaint sought to have a class certified and asserted claims against Westlake for violation of the Arkansas Deceptive Trade Practices Act, violation of the usury provisions of the Arkansas Constitution, violation of certain provisions of the Arkansas Uniform Commercial Code, unjust enrichment, and declaratory judgment. Specifically, she challenged the allegedly usurious interest rates in Westlake's contracts and addenda as well as Westlake's practices of requiring consumers to pay repossession-report fees to law enforcement agencies.

On May 3, Westlake moved to compel arbitration in the circuit court action, seeking to enforce the terms of the Arbitration Agreement and to dismiss or stay proceedings ("the Motion"). In response, England raised three arguments in opposition: (1) the Arbitration Agreement does not comply with the ADACA and, specifically, section 4-75-413; (2) the

4

Arbitration Agreement fails on the element of mutuality of obligation; and (3) Westlake waived any right to compel arbitration in this matter when it sued England in district court to collect a deficiency judgment. On June 15, Westlake filed a reply addressing each of England's arguments.

On September 7, the circuit court held a hearing on Westlake's Motion. At the conclusion of the hearing, Westlake's counsel orally requested that any order on the Motion contain specific findings of fact and conclusions of law. The circuit court responded from the bench, "If the Court is required to, the Court will. If the Court's not required to, I might not. So, I don't—I don't believe that the Court is required to make specific findings. I do what the Court's required to do." The circuit court otherwise took the Motion under advisement.

On September 19, the circuit court filed an order denying Westlake's Motion. The order contained no specific findings of fact or conclusions of law and, instead, simply stated, "Upon consideration of all matters before it, the Court hereby denies Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings."

On October 3, Westlake timely filed its original notice of appeal and a Rule 52(b) motion to amend the order denying its Motion. The motion to amend reiterated Westlake's oral request made at the hearing for specific findings of fact and conclusions of law addressing all of the parties' arguments both for and against arbitration. As an exhibit to the motion to amend, Westlake attached a copy of the Arkansas Supreme Court's decision in *Robinson Nursing & Rehabilitation Center, LLC v. Phillips*, 2022 Ark. 109 ("*Phillips III*"). England

5

did not respond to the motion to amend. Moreover, the circuit court never ruled on it; accordingly, the motion to amend was deemed denied by operation of law as of November 2, the thirtieth day from the date it was filed. *See* Ark. R. Civ. P. 52(b)(1) (2023); Ark. R. App. P.–Civ. 4(b)(1) (2023). Westlake filed an amended notice of appeal, adding the deemed denial of its motion to amend, on November 4, 2022.

## II. *Standard of Review*

We review a circuit court's order denying a motion to compel arbitration de novo on the record, with the entire case open for review. *DIRECTV, Inc. v. Murray*, 2012 Ark. 366, at 3, 423 S.W.3d 555, 559; *GGNSC Holdings, LLC v. Lamb*, 2016 Ark. 101, at 5, 487 S.W.3d 348, 352. Even under that standard, we do not reverse absent a showing by an appellant that the circuit court erred. *Diamante, LLC v. Dye*, 2013 Ark. App. 630, at 4, 430 S.W.3d 196, 199.

## III. *Discussion*

A. Necessity of Remand for Explanation of the Circuit Court's Rationale

Westlake initially argues that, in order to ensure that the parties are provided a full and fair opportunity for appeal, the circuit court should be specifically instructed on remand to provide specific findings of fact and conclusions of law that address every argument the parties raised in support of, or in opposition to, arbitration.

Westlake notes that the Arkansas Supreme Court has held that specific findings of fact and conclusions of law are required on orders denying motions to compel arbitration. *See Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2022 Ark. 193, at 4 ("*Phillips IV*"); *Phillips*

6

*III*, *supra*; *Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, at 5, 434 S.W.3d 357, 360. *Phillips III* and *Phillips IV* are appeals that arose out of the same class-action case brought against a nursing home where the defendants moved to compel arbitration as to certain class members/nursing home residents. In *Phillips III*, the Pulaski County Circuit Court granted the defendants' motion to compel arbitration as to 93 residents and denied it with respect to 104 residents. *Phillips III*, 2022 Ark. 109, at 2. The circuit court's order did not state the basis for that decision. *Id.* Without reaching the merits, the Arkansas Supreme Court remanded the order with instructions for the circuit court to make specific findings regarding its decision to deny the defendants' motion to compel arbitration. *Id.* As the supreme court explained, "It is essential that we are made aware of the circuit court's rationale for its decision so that we can conduct a proper appellate review." *Id.*

In *Phillips IV*, the appeal was from an order granting arbitration as to fifteen residents and denying it with respect to eighteen residents, and the order similarly did not explain the basis for the decision. *Phillips IV*, 2022 Ark. 193, at 3–4. The decision in *Phillips III* was handed down during the briefing period for *Phillips IV*. *Id.* The parties agreed, based on *Phillips III*, that the arbitration order at issue in *Phillips IV* would have to be remanded, and our supreme court unanimously ordered that result, explaining, "The circuit court again made no findings, other than granting in part and denying in part as to certain residents, without stating the basis for its decision. In order to conduct a proper appellate review, we must know the circuit court's rationale for its decision." *Id.* at 4.

Similar to *Phillips III* and *Phillips IV*, the order at issue here simply "denies Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings" without any specific findings of fact or conclusions of law to explain the circuit court's rationale for its decision. That said, considering our de novo standard of review and the entire record, and pursuant to Arkansas Rule of Civil Procedure 52 (2023), we hold that the merits of this appeal can be addressed without having to remand for specific findings of fact and conclusions of law related to the denial of Westlake's Motion.

In *Colonel Glenn Health & Rehab, LLC v. Aldrich*, we held:

> Findings of fact and conclusions of law under Rule 52(a)(1) apply only to the entry of judgments in "contested actions tried upon the facts without a jury." In the case at bar, there is no judgment in a contested action tried upon the facts without a jury. Here, the circuit court ruled as a matter of law on a motion to compel arbitration. Therefore, the order denying the motion to compel arbitration is not a judgment as contemplated by Rule 52.

2020 Ark. App. 222, at 5, 599 S.W.3d 344, 348. We reached the same conclusion in *Hickory Heights Health & Rehab, LLC v. Cook*, 2018 Ark. App. 409, 557 S.W.3d 286, after an appeal was taken from an order summarily denying a motion to compel arbitration despite the appellant's request for findings of fact and conclusions of law pursuant to Rule 52(a)(1). In it, we stated:

> "Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules." Ark. R. Civ. P. 52(a). Although it may be the better practice for the circuit court to make findings on motions, the court's failure to do so is not error.

*Id.* at 4 n.2, 557 S.W.3d at 289 n.2. Rule 52 provides no basis to challenge the lack of findings of fact or conclusions of law in connection with the denial of the motion because it expressly

applies only to "all contested actions tried upon the facts without a jury." Ark. R. Civ. P. 52(a)(1). It does not apply to a mere declaration of law because it does not finally determine a claim. *See Boyett v. Boyett*, 269 Ark. 36, 39, 598 S.W.2d 86, 88 (1980).

Although *Phillips III* and *Phillips IV* are more recent cases, and the dissent in *Phillips III* suggests that the Arkansas Supreme Court had implicitly overruled cases reaching holdings similar to them, *see Phillips III*, 2022 Ark. App. 109, at 4–5 (Hudson, J., dissenting) (citing *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119), we note that the *Phillips* cases stop short of reversing *Aldrich*, *supra*, and *Cook*, *supra*. Accordingly, because we are tasked solely with determining whether the circuit court erred in denying Westlake's Motion on the basis of the Arbitration Agreement signed by England, we are able to conduct a de novo review of the case and the circuit court's ruling.

B. Merits of Order Denying the Motion

To reiterate, this court "review[s] a circuit court's order denying a motion to compel arbitration de novo on the record." *Lamb*, 2016 Ark. 101, at 5, 487 S.W.3d at 352. As a matter of public policy, arbitration is strongly favored in Arkansas because it offers a "less expensive and more expeditious means of settling litigation and relieving docket congestion." *Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, at 6, 485 S.W.3d 669, 673. The Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), which expressly governs the arbitration agreement at issue in this case, requires the application of "federal substantive law regarding arbitration" in state courts. *Id.* at 5, 485 S.W.3d at 673. Included within that substantive law is a "liberal federal policy favoring arbitration" that mirrors Arkansas's own

9

policy. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). To serve that policy, the FAA requires courts to "rigorously enforce agreements to arbitrate" according to their terms. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). When presented with a valid arbitration agreement, the court should compel claims within the scope of the agreement to arbitration "as quickly and easily as possible." *See Am. Ins. Co. v. Cazort*, 316 Ark. 314, 320, 871 S.W.2d 575, 578 (1994).

In considering the denial of Westlake's Motion, we are limited to deciding two issues: (1) whether there is a valid arbitration agreement and (2) whether the dispute falls within the scope of that agreement. *See Newby*, 2014 Ark. 280, at 5, 437 S.W.3d at 122. "[S]tate contract law governs . . . whether an enforceable arbitration agreement exists between litigants," and federal law determines "whether the litigants' dispute falls within the scope of the arbitration agreement." *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). In answering these two questions, any doubts regarding arbitrability must be resolved in favor of arbitration. *See HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, at 6, 424 S.W.3d 304, 308 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).

The record demonstrates that England does not dispute the following: (1) she signed the Contract, an agreement that provides for binding arbitration; (2) the Arbitration Agreement is governed by the FAA; and (3) the parties' dispute is within the scope of the Arbitration Agreement. Rather, England argues that the circuit court should decline to enforce the Arbitration Agreement for three reasons: (1) the Arbitration Agreement is invalid under the ADACA; (2) the Arbitration Agreement lacks mutuality of obligations;

10

and (3) Westlake waived its right to arbitration in this action because it filed a separate lawsuit against England to collect a deficiency judgment.

1. *Validity and enforceability of Arbitration Agreement under the ADACA*

Section 413(a) of the ADACA provides that a contract for the sale of a motor vehicle may not contain a provision "requiring the purchaser to submit a disputed matter" to binding arbitration "[e]xcept as provided in subsection (b)." Ark. Code Ann. § 4-75-413(a). Subsection (b) states:

> The purchaser of a motor vehicle may knowingly and voluntarily agree to submit to binding arbitration only by signing a separate document entitled in bold print "Waiver of Purchaser's Right to Sue" containing a written waiver specifically acknowledging the purchaser's relinquishment of the right to have any dispute over the sale or operation of the motor vehicle decided by a court of law.

Ark. Code Ann. § 4-75-413(b)(1)(A). Subsection (b) further specifies that any arbitration agreement "shall not be enforceable unless contained in a separate document." Ark. Code Ann. § 4-75-413(b)(2). Accordingly, under the plain language of the ADACA, a purchaser of a motor vehicle can agree to binding arbitration by signing an arbitration agreement contained in a separate, appropriately captioned document. *See* Ark. Code Ann. § 4-75-413(a), (b); *see also* 2 David Newbern, John Watkins & D.P. Marshall Jr., *Arkansas Civil Practice & Procedure* § 14:14 n.7 (5th ed. 2011).

Our de novo review of the record makes clear that the Arbitration Agreement at issue is contained in a separate document, and England signed it. The Arbitration Agreement follows, nearly verbatim, the language required under the ADACA. The Arbitration Agreement is titled "*WAIVER OF PURCHASER'S RIGHT TO SUE*," and in it, England "*specifically*

11

*acknowledge*[d] *Buyer's relinquishment of the right to have any dispute over the sale or operation of the Vehicle decided by a court of law.*" (Emphasis in original.)

We disagree with England's contention that because the Arbitration Agreement is incorporated into the Contract, it violates the ADACA. The ADACA specifically provides that a contract for the sale of a motor vehicle can include an arbitration agreement "as provided in subsection (b)." *See* Ark. Code Ann. § 4-75-413(a), (b). We have held that separate documents signed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are considered together. *See Sloop v. Kiker*, 2016 Ark. App. 125, at 6, 484 S.W.3d 696, 700. No provision of the ADACA changes that settled law or prohibits this common business practice.

The ADACA further contemplates the documents being considered together because there would be no purpose in allowing a purchaser to sign a separate document providing for binding arbitration—as required by the ADACA—if that document would be void when taken together with the motor-vehicle contract. Such an interpretation of the ADACA would render subsection (b) meaningless. *See Great Lakes Chem. Corp. v. Bruner*, 368 Ark. 74, 82, 243 S.W.3d 285, 291 (2006) (construing statutes so that no word is left void, superfluous, or insignificant and giving meaning and effect to every word in the statute, if possible). Because England specifically complied with the ADACA requirement to sign a separate arbitration agreement, which then governs disputes arising under the Contract, we hold that the Arbitration Agreement is valid and enforceable under the ADACA.

*2. Satisfaction of the mutuality-of-obligations element of a binding contract*

12

Arkansas law is clear that mutuality of obligations does not mean that "every provision within a contract [must] be bilateral" and "does not require a precisely even exchange of identical rights and obligations between the contracting parties." *E.g.*, *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, at 5, 598 S.W.3d 1, 6. Rather, "[i]t is enough that the duty unconditionally undertaken by each party be regarded by the law as a sufficient consideration for the other's promise." *Id.* at 6, 598 S.W.3d at 6. In other words, "neither party is bound unless both are bound." *Id.* at 4, 598 S.W.3d at 5. In *Willis*, our supreme court held that an installment-sales contract very similar to the one at issue in this appeal satisfied the mutuality-of-obligations requirement of Arkansas law, notwithstanding the fact that the contract preserved the seller's self-help remedies, included a class-action waiver, and allowed the seller to reject the buyer's choice of arbitrator. *Id.* at 6–9, 598 S.W.3d at 6–7. The mere fact that those reservations benefited the buyer and seller differently did not destroy mutuality. *Id.*

And we addressed another similar arbitration agreement in *EBF Partners, LLC v. Letha's Pies, LLC*, 2021 Ark. App. 187, 625 S.W.3d 713. We described the agreement in question as follows:

> The agreement provides for two different types of "forums": judicial and arbitration. Although EBF has substantial judicial remedies if Letha defaults, the judicial remedies are available only if Letha's does not request arbitration. If a defaulting event occurs, EBF had the right to enforce the agreement in a judicial forum, unless the appellee requested arbitration. If the latter occurred, then EBF would be obligated to pursue arbitration.

*Id.* at 7–8, 625 S.W.3d at 718. We held that the substantial judicial remedies otherwise available to EBF did not destroy mutuality because both sides had agreed to submit to arbitration at the request of the other. *Id.* at 8, 625 S.W.3d at 718.

The Arbitration Agreement similarly obligates both parties to submit to arbitration. It sets out the following procedure for either party to "initiate an arbitration proceeding": "the initiating party must notify the other party, in writing, that it wishes to arbitrate a Dispute." We note that the Arbitration Agreement does not restrict the right to initiate arbitration to only one party but rather contemplates that either England or Westlake can be the "initiating party." Under the express terms of the Arbitration Agreement, both parties possess the right to demand arbitration.

And as in *Letha's Pies*, *supra*, the Arbitration Agreement also allows either side to pursue judicial remedies unless the other gives notice "that it wishes to arbitrate a Dispute." Pursuant to its terms, England could have demanded arbitration in the district court case filed by Westlake, and had she chosen to do so, Westlake would have then been required to pursue that case through arbitration. The fact that England chose not to demand arbitration in that separate action does not result in her being able to refuse Westlake's demand for arbitration in this one.

Our supreme court specifically recognized the FAA's requirement that arbitration agreements be put on equal footing with all other contracts. *See Willis*, 2020 Ark. 133, at 6–8, 598 S.W.3d at 6–7. Moreover, specifically regarding self-help provisions, since the filing of England's brief, we have held that, as applied to arbitration agreements, the requirement

14

of mutuality means only that "arbitration agreements may not be used to shield one party from litigation while allowing the other party relief through the court system." *See, e.g.*, *Altice USA, Inc. v. Johnson*, 2023 Ark. App. 120, at 15, 661 S.W.3d 707, 719. Thus, the fact that a party "may use other measures to resolve disputes before resorting to arbitration . . . has no relevance to our analysis—which looks only at the terms of the arbitration agreement itself." *Altice USA, Inc. v. Campbell*, 2023 Ark. App. 123, at 10–11, 661 S.W.3d 720, 728 (citing *Willis*, 2020 Ark. 133, at 4, 598 S.W.3d at 5).

We disagree with England's reliance on *Alltel Corp. v. Rosenow*, 2014 Ark. 375. In *Rosenow*, the provision at issue was a general nonwaiver clause, found outside the arbitration agreement, which provided that if Alltel failed to enforce any right or remedy available to it, such failure was not a waiver. *Id.* at 7. There is no such provision at issue before us, and we recognize that *Rosenow* expressly looked outside the actual arbitration agreement to find a provision that destroyed mutuality of obligations as to the arbitration agreement. *Id.* We recently stated in *Campbell*, post–*Willis*, that the mutuality-of-obligations analysis "looks only at the terms of the arbitration agreement itself." *E.g.*, *Campbell*, 2023 Ark. 123, at 11, 661 S.W.3d at 728. Accordingly, if *Rosenow* is not distinguishable from this case, it has been abrogated by *Willis*, *supra*.

### C. Did Westlake Waive its Right to Compel Arbitration?

Finally, the record before us indicates that England argued before the circuit court that Westlake waived its right to demand arbitration in this action. England is correct that a party can waive its right to compel arbitration—as she did in the related district court action

15

by making no demand for arbitration in that case. We are not inclined, however, to find merit in England's claim that by filing a separate action for a deficiency judgment in district court, Westlake waived its right to demand arbitration in this purported class action in which Westlake is a defendant.

In the case before us, Westlake promptly requested arbitration pursuant to the procedures set out in the Arbitration Agreement, as it was so entitled. Our review of the record reveals no indication that Westlake has shown any intent to seek resolution of England's new putative-class claims through litigation or has otherwise waived its right to demand arbitration in this case. There is, however, evidence that England expressly admitted before the circuit court that "the Arkansas Supreme Court has ruled a secured creditor did not waive its right to arbitration by suing to collect a deficiency judgment."

Of note, in *Willis*, *supra*, our supreme court expressly held that the defendant did not waive its right to compel arbitration by filing a lawsuit seeking payment for a deficiency judgment. 2020 Ark. 133, at 9–10, 598 S.W.3d at 7–8. The facts in *Willis* are similar in that when the debtors failed to make their payments, the vehicle in question was repossessed and sold, and the account was credited, but there remained an outstanding balance. *Id*. at 4, 598 S.W.3d at 2. The creditor then filed a complaint in district court seeking payment of the outstanding balance. *Id*. After appealing a district court judgment in the creditor's favor to circuit court, the debtors asserted class counterclaims based on usury and UCC violations and sought class certification. *Id*. In response, the creditor filed a motion to compel arbitration. *Id*. The circuit court held that the creditor had waived its right to arbitration by

16

filing the action to collect the outstanding balance. *Id.* The Arkansas Supreme Court reversed, holding that the creditor did not waive arbitration of the class claims by seeking monetary relief in the district court. *Id.* at 10, 598 S.W.3d at 8.

Recognizing that *Willis* controls here and requires compelling arbitration, England suggested below that *Willis* was overruled by the United States Supreme Court's recent opinion in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). We disagree. In *Morgan*, the Supreme Court overturned the Eighth Circuit's rule requiring a showing of prejudice to find that a party waived its right to arbitration, explaining that the prejudice requirement was not required by federal law and that federal courts could not create arbitration-specific variants of the federal rules. *Id.* at 416–17. The Arkansas Supreme Court's decision in *Willis* was not focused on prejudice—in fact the term "prejudice" is not mentioned therein.

England submits that *Willis* is inconsistent with *Morgan*, which she claims "mandates that courts must examine whether Westlake's conduct in suing England and continuing to litigate its case against her acts as a waiver of Westlake's rights to arbitration." We note that *Willis* examined the same conduct at issue in England's waiver argument, and just as she claims is required by *Morgan*, the *Willis* court focused entirely on the conduct of the secured creditor seeking a deficiency judgment. *See Willis*, 2020 Ark. 133, at 9–10, 598 S.W.3d at 7–8. The *Willis* court never once examined whether the plaintiff in that case was prejudiced by the conduct allegedly constituting a waiver, which is the only issue that the United States Supreme Court prohibited in *Morgan*. *See Morgan*, 596 U.S. at 417. We hold that England's

17

waiver argument is of no merit pursuant to the analysis in *Willis* and that it has not been overruled by *Morgan*.

Pursuant to our de novo review of the record before us, and contrary to England's arguments otherwise, we hold that the Arbitration Agreement is valid and enforceable under the ADACA and that it satisfies the mutuality-of-obligations element of a binding contract. Moreover, we hold that Westlake did not waive its right to demand arbitration in this purported class action in which it is a defendant merely by its filing a separate action for a deficiency judgment in the district court. Accordingly, we reverse and remand the matter to the circuit court with instructions, consistent with this opinion, to enter an order granting Westlake's Motion.

Reversed and remanded.

HARRISON, C.J., agrees.

THYER, J., concurs.

**CINDY GRACE THYER, Judge, concurring.** I agree with the majority that we can and should decide this case on the merits. In my opinion, the *Phillips*[1] decisions, when viewed in the context of prior case law, have muddied the waters as to when circuit courts are required

---

[1]*Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2017 Ark. 162, 519 S.W.3d 291 (*Phillips I*); *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 576 S.W.3d 624 (*Phillips II*); *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2022 Ark. 109 (*Phillips III*); *Robinson Nursing & Rehab. Cntr., LLC v. Phillips*, 2022 Ark. 193 (*Phillips IV*); *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2023 Ark. 175, 678 S.W.3d 175 (*Phillips V*).

to issue findings on the denial of a motion to compel arbitration[2] and have left our courts with little guidance on how to proceed going forward. I write separately in an attempt to provide some guidance, if not clarity, to this opaque situation.

According to Rule 52 of the Arkansas Rules of Civil Procedure and our prior case law, circuit courts are not required to render specific findings when ruling on motions, including motions to compel arbitration. Ark. R. Civ. P. 52(a)(1) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules."); *see also Colonel Glenn Health & Rehab, LLC v. Aldrich*, 2020 Ark. App. 222, 599 S.W.3d 344; *Hickory Heights Health & Rehab, LLC v. Cook*, 2018 Ark. App. 409, 557 S.W.3d 286 (findings of fact and conclusions of law under Rule 52(a)(1) are not required for decisions on motions to compel arbitration.) Thus, blanket denials of motions to compel were permitted and did not automatically require a remand for specific findings. Remand was required only in those cases in which the court made a specific finding as to an asserted defense without first ruling on the threshold issue of the validity of the arbitration agreement itself. This framework appears to have changed upon the supreme court's decision in *Phillips III*.

Prior to *Phillips III*, our cases were split between those cases in which the circuit court issued a blanket denial (not requiring a remand) and those in which it did not (resulting in

---

[2]I am confident I am not alone in this belief because the dissent in *Phillips III* emphasized that the majority's decision in that case not only overruled sub silentio *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119, but also marked yet another dramatic shift in our appellate review of arbitration agreements, resulting in confusion as what is required of a circuit court in addressing a motion to compel. *Phillips III*, 2022 Ark. 109, at 5 (Hudson, J., dissenting).

a remand). Stated differently, whether a remand was required in a denial-of-arbitration case seemed to hinge on whether the circuit court issued a blanket denial of an arbitration motion or whether it ruled solely on a defense to arbitration.

Turning now to the *Phillips* cases, in *Phillips I*, our supreme court ruled only on Phillips's attempts at class certification. When the case returned to the court in *Phillips II*, the focus shifted to the propriety of Robinson's efforts to compel arbitration of the claims of its 544 residents identified in the class. Those 544 members were divided into separate categories based on the circumstances surrounding the execution of their individual agreements. In *Phillips II*, the circuit court, in line with Rule 52(a)(1), issued a summary denial of arbitration with respect to each of those separate categories. Our supreme court, appearing to follow our previous line of cases holding that remand for findings was not required, considered the arbitration issue of each category on the merits—affirming in part and reversing and remanding in part.

However, in *Phillips III*, *Phillips IV*, and *Phillips V*, the supreme court ordered a remand for additional findings despite the circuit court's issuance of a blanket denial. It did so without explaining its departure from prior precedent—only stating that such findings were necessary to conduct its review. Admittedly, it is unclear whether our supreme court intended to depart from our prior case law and now require findings in all cases denying motions to compel arbitration despite the plain language of Rule 52 or whether it intended only to create another subset of arbitration cases wherein such findings are required, thereby leaving prior case law allowing general denials in some circumstances intact. Because I find

that the *Phillips* cases can be harmonized with our prior case law, I concur in the majority's decision that a remand for additional findings is not required.

A brief history of our more notable cases in this area is instructive.

In *Bank of the Ozarks, Inc v. Walker*, 2014 Ark. 223, 434 S.W.3d 257, an order with partial findings was at issue. In *Bank of the Ozarks*, the circuit court specifically denied the Bank's motion to compel arbitration on the basis of Walker's defense of unconscionability. The parties, however, had also disputed the validity of the arbitration agreement, and the circuit court's order failed to address the agreement's validity. Noting that the circuit court's specific findings had failed to address the threshold question of whether there was a valid arbitration agreement, our supreme court reversed and remanded for additional findings as to the validity of the arbitration agreement.

In *Newby*, 2014 Ark. 280, 437 S.W.3d 119, however, our supreme court concluded that remand for additional findings was not necessary. In that case, as in *Bank of the Ozarks*, the parties disputed the existence of a valid arbitration agreement. While the circuit court orally stated that it was denying the motion to compel arbitration on the basis of waiver, its written order simply delivered a blanket denial. After determining that the written order containing the blanket ruling controlled over the more specific oral ruling and after distinguishing its decision in *Bank of the Ozarks*, the supreme court concluded that a circuit court's blanket denial of the motion to compel arbitration constituted a ruling on all the issues raised by the parties, including the validity of the agreement, and that a remand was not necessary. The supreme court premised its decision on the notion that when a circuit

21

court denies a motion without expressly stating the basis for its ruling, its ruling is deemed to have encompassed the issues presented to it by the briefs and arguments of the parties.

In *Regional Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356, the supreme court again concluded that a remand for additional findings was unnecessary. In *Henry*, the validity of the arbitration agreement was at issue, and the court entered a blanket denial of the motion to compel. Appellant filed a motion requesting specific findings, but the court denied the motion. This court reached the issues without remand, noting once again that when a circuit court denies a motion to compel arbitration without expressly stating the basis for its ruling, that ruling encompasses the issues presented to the circuit court by the briefs and arguments of the parties.

This issue was raised again sua sponte by the supreme court in GGNSC *Holdings, LLC v. Chappel*, 2014 Ark. 545, 452 S.W.3d 645. In *Chappel*, the supreme court remanded for additional findings because the circuit court specifically denied the motion to compel due to impossibility of performance—a defense—without ruling on the issue of the agreement's validity. Because the circuit court's ruling was not a blanket denial, the court found the facts of that case were more closely aligned with that in *Bank of the Ozarks* than in *Newby* and remanded.

*Diamante, LLC v. Dye*, 2015 Ark. 243, 464 S.W.3d 459, involved a motion to compel arbitration in a class-action lawsuit. In an earlier appeal of that case (*Diamante, LLC v Dye*, 2013 Ark. App. 630, 430 S.W.3d 196 (*Diamante I*)), this court held that a valid agreement to arbitrate existed between Diamante and the Dyes, as individuals, but that Diamante's

22

delay in moving to compel arbitration resulted in a waiver as to the Dyes individually. However, because class certification had been held in abeyance while on appeal, the circuit court's order did not address whether valid arbitration agreements existed between Diamante and the other class members or whether Diamante had waived arbitration as to the other members in the class as well. On remand, the circuit court entered an order finding that Diamante had waived its right to arbitrate as to the unnamed class members. It did not discuss, however, the validity of the arbitration agreement as to the unnamed class members.

The supreme court in remanding for additional findings noted that our opinion in *Diamante I*, which concluded that there was a valid arbitration agreement between Diamante and the Dyes, did not apply to the subsequent motion to compel arbitration as to the unnamed class members. As a result, the supreme court reversed and remanded to the circuit court for a ruling on whether there was a valid agreement to arbitrate as between Diamante and the unnamed class members. Once again, in that case, the circuit court had not issued a blanket denial; rather, it had denied the motion to compel and gave a specific reason for denial—waiver. Thus, a remand was necessary.

Our court next discussed the lack of findings in *Cook*, 2018 Ark. App. 409, 557 S.W.3d 286. In *Cook*, we noted that the circuit court summarily denied the motion to compel in a one-page order without explaining its reasoning. In a footnote, citing Rule 52(a), we noted that findings of fact and conclusions of law are unnecessary on decisions of motions under these rules. We stated that, although it may be the better practice for the circuit court to make findings on motions, the court's failure to do so was not erroneous, and unless the

contrary could be shown, we presume that the circuit court acted properly and made such findings of fact as were necessary to support its judgment. 2018 Ark. App. 409, at 4 n.2, 557 S.W.3d at 289 n.2. So, once again, when there was a blanket denial, we did not remand for findings.

A year later, in *Phillips II*, the supreme court was faced with the circuit court's summary denial of the nursing home's motion to compel arbitration. In deciding the issues, the supreme court, citing *Newby*, concluded that remand was not required because the circuit court had issued a blanket denial; thus, it was able to address the issues raised in the motions and responses alone.

The circuit court in *Aldrich*, 2020 Ark. App. 222, 599 S.W.3d 344, also entered a blanket denial of a motion to compel arbitration. The nursing home requested findings under Rule 52, but the circuit court denied the request. We held that findings under Rule 52(a) were not required because that rule applied only to the entry of a judgment in a contested action tried upon the facts without a jury.

Then, in *Phillips III* and *Phillips IV*, the supreme court appears to have changed course. In those cases, the supreme court noted that the circuit court had granted the motion to compel arbitration as to some of the class members and had denied it as to others but had done so without making any findings "whatsoever." The supreme court stated that, in order to conduct a proper appellate review, it was essential that it be made aware of the circuit court's rationale for its decision. As a result, the supreme court remanded for further findings.

24

In a dissent in *Phillips III*, Justice Hudson, joined by Justices Baker and Wynne, noted that the majority opinion in *Phillips III* was an abrupt departure from our precedent and was inconsistent with its review in the prior appeal from this very same case. The dissent discussed the previous cases, stating that, by its general denial of the motion to compel, the circuit court had, in fact, ruled on each of the arguments raised by the appellees, including the threshold issue of whether a valid arbitration agreement existed. In doing so, the dissent claimed that the majority had overruled *Newby* sub silentio. *Phillips III*, 2022 Ark. 109, at 3–5 (Hudson, J., dissenting).

Next, this court decided five *Suddenlink* cases: *Altice USA, Inc. v. Peterson*, 2023 Ark. App. 116, 661 S.W.3d 699; *Altice USA, Inc. v. Francis*, 2023 Ark. App. 117, 661 S.W.3d 699; *Altice USA, Inc. v. Johnson*, 2023 Ark. App. 120, 661 S.W.3d 707; *Altice USA, Inc. v. Campbell*, 2023 Ark. App. 123, 661 S.W.3d 720; and *Altice USA, Inc. v. Runyan*, 2023 Ark. App. 124, 662 S.W.3d 247. All of those cases, except *Johnson*,[3] involved a blanket denial of the motion to compel arbitration. We addressed the issues in those cases, citing *Newby*, noting that the issues had been fully briefed below.

The last case is another iteration of the *Phillips* line of cases, *Phillips V*. On remand from *Phillips IV*, the circuit court granted the motion to compel as to some of the class members and denied it as to others. In doing so, the circuit court listed factors that may or

---

[3]In *Johnson*, the circuit court's specific findings denying the motion to compel arbitration were related to the validity of the arbitration agreement itself. Therefore, it appears that remand for further findings was not necessary because the circuit court ruled on that threshold issue.

may not have been relevant to some of the class members. The supreme court remanded the case again, finding that the circuit court had failed to provide it with an adequate rationale for its decision. It stated, once again, that absent specific findings, the supreme court could not conduct a proper review.

The issue is whether these later *Phillips* cases can be reconciled with our prior case law. I think they can. In *Phillips II*, the circuit court denied the four motions to compel as to all the class members, and as with the other blanket-denial cases, there was no remand for findings. However, in the later *Phillips* cases, the circuit court granted the motions to compel as to some of the plaintiffs and denied them as to others. In fact, in the last *Phillips* case, the circuit court hinted that the denials may have been granted on different bases depending on the circumstances surrounding the individual class members. Because it was unclear on what basis the circuit court differentiated between the class members resulting in the differing outcomes, the matters needed to be sent back for further findings.

In my view, *Phillips III* and *Phillips IV*, while not entirely consistent with our prior holdings, do not actually overrule *Newby* and our prior case law. Instead, those cases create a new subset of arbitration cases in which a circuit court's findings relative to particular putative class members differ. In other words, when a circuit court determines that some, but not all, individuals in a putative class are subject to binding arbitration, it is incumbent on the circuit court to make specific findings of fact and conclusions of law on that decision so that the appellate courts may provide adequate review of the circuit court's decision.

26

Colloquially, when the circuit court tears the blanket, it is the circuit court's responsibility to explain its reasons for the tear.

The blanket here was not torn by the circuit court; thus, I think it is possible to distinguish the later *Phillips* cases from the case before us. With that said, I wholeheartedly believe that additional guidance and clarity from the supreme court on how circuit courts should proceed in these oft-recurring types of cases would be quite beneficial.

*Wright, Lindsey & Jennings LLP*, by: *Judy Simmons Henry*, *Michael A. Thompson*, and *P. Collins Hickman Jr.*, for appellant.

*Corey D. McGaha PLLC*, by: *Corey D. McGaha*; and *Turner and Turner, P.A.*, by: *Todd M. Turner*, for appellee Amber England.