Cite as 2025 Ark. App. 34

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-23-538

|  |  |
|---|---|
| BOONE OPERATIONS, LLC, D/B/A HARRISON REHABILITATION AND HEALTH CETER; HARRISON – PROGRESSIVE ELDERCARE SERVICES, INC., D/B/A HARRISON REHABILITATION AND CARE CENTER; PROGRESSIVE ELDERCARE SERVICES, INC.; JEJ INVESTMENTS, LLC; MARYBRET, LLC; ROSS PONTHIE; JOHN F. PONTHIE; MARK THOMPSON; CATHY ABATANGLE, IN HER CAPACITY AS ADMINISTRATOR OF HARRISON REHABILITATOIN AND HEALTH CENTER; AND LILLIE I. DEAN, IN HER CAPACITY AS DIRECTOR OF NURSING OF HARRISON REHABILITATION AND HEALTH CENTER<br>APPELLANTS<br><br>V.<br><br>CHERIE ADAMS, AS PERSONAL ADMINISTRATRIX OF THE ESTATE OF ROY GATTIS AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF ROY GATTIS<br>APPELLEES | Opinion Delivered January 29, 2025<br><br>APPEAL FROM THE BOONE COUNTY CIRCUIT COURT [NO. 05CV-20-130]<br><br>HONORABLE JOHNNIE A. COPELAND, JUDGE<br><br>AFFIRMED |

**N. MARK KLAPPENBACH, Chief Judge**

This appeal concerns the validity of an arbitration agreement.  Roy Gattis resided in

a nursing home in Harrison, Arkansas (hereinafter "Boone"), from May 2016 until July

2018. Roy died in March 2019, after which his daughter, Cherie Adams, became the personal administratrix. Cherie filed a lawsuit against Boone alleging, in part, negligence, medical malpractice, and wrongful death. Boone moved to compel arbitration, contending that when Roy was admitted in 2016, Cherie was Roy's appointed general power of attorney, and she signed a binding arbitration agreement on Roy's behalf. Cherie challenged the agreement's validity. The circuit court found the agreement invalid because Roy's 2013 power-of-attorney document required Cherie and her brother to act jointly to bind their father to the arbitration agreement. The circuit court denied the motion to compel arbitration, and this appeal followed. We affirm.

We review a circuit court's order denying a motion to compel arbitration de novo on the record, with the entire case open for review. *Westlake Servs., LLC v. England*, 2024 Ark. App. 271, 689 S.W.3d 664. We do not reverse absent a showing by an appellant that the circuit court erred. *Id.* On appeal, we are limited to deciding two issues: (1) whether there is a valid arbitration agreement and (2) whether the dispute falls within the scope of that agreement. *Id.* State contract law governs whether an enforceable arbitration agreement exists between litigants, and federal law determines whether the litigants' dispute falls within the scope of the arbitration agreement. *Id.* In answering these two questions, any doubts regarding arbitrability must be resolved in favor of arbitration. *Id.*

The salient question here is whether the circuit court was correct in finding this agreement invalid because Cherie could not, alone, bind her father. This is a matter of Arkansas contract law, which requires the following essential elements: (1) competent

parties; (2) subject matter; (3) consideration; (4) mutual agreement; and (5) mutual obligations. *See Altice USA, Inc. v. Campbell*, 2023 Ark. App. 123, 661 S.W.3d 720. The proponent of the arbitration agreement has the burden of proving these essential elements. *Ashton Place Health & Rehab, LLC v. Russell*, 2023 Ark. App. 351, 675 S.W.3d 140. When a third party signs an arbitration agreement on behalf of another, as was done in this case, the court must determine whether the third party was clothed with the authority to bind the other person to arbitration. *Nursing & Rehab. Ctr. at Good Shepherd, LLC v. White*, 2024 Ark. App. 307, 689 S.W.3d 684. The Federal Arbitration Act's policy favoring arbitration is about treating arbitration contracts like all others, not about fostering arbitration. *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022).

A power of attorney is an instrument in writing by which one person, as principal, appoints another as his or her agent and confers upon that agent the authority to perform certain specified acts or kinds of acts on behalf of the principal. *Ashton, supra.* The nature and extent of the agent's authority must be ascertained from the wording of the power-of-attorney instrument itself. *Id.*

In August 2013, Roy executed a general power of attorney that appointed Cherie and her brother, Anthony Gattis, "as [his] attorneys-in-fact (collectively referred to as [his] 'Agent')." The power of attorney required that Cherie and Anthony "act jointly, with the consent of the other Agent." "The Agents" were given broad powers that would be effective until Roy's death unless Roy revoked their status "at any time by providing written notice to my Agent." In May 2016, Cherie signed the arbitration agreement, and her signature was

3

identified by a checked box next to "Power of Attorney." According to the arbitration agreement, no power-of-attorney document was provided to Boone.

In 2022, Anthony provided an affidavit swearing that he was never informed in writing or verbally that his status as "agent" had been revoked. Also in 2022, Cherie provided an affidavit swearing that she gave the power-of-attorney document to Boone's administrator, but she did not check the box next to "Power of Attorney." Cheri also stated that Roy did not give her any notice prior to his 2016 admission that he had revoked or altered the 2013 power of attorney. Cherie and Anthony swore that Anthony had not been asked or consulted about the arbitration agreement, and Cherie was not purporting to act on her brother's behalf.

Boone produced a July 2018 letter from Cherie to a staff member at the nursing home stating that Roy had "terminated" Anthony's "authority" from the power of attorney in 2013 and in 2018. It also produced a "Confirmation of Agent Authority" document signed by Roy in May 2018 in which Roy was honoring his 2013 power of attorney "granting sole authority" to Cherie to act as his agent. These two documents, neither witnessed nor notarized, conflicted with Cherie's and Anthony's 2022 affidavits and the 2013 power-of-attorney document. Boone added that Cherie should be estopped from now claiming that she lacked authority to bind her father to the arbitration agreement and that it correctly relied on the assumption of validity recited in our state's Uniform Power of Attorney Act, codified at Ark. Code Ann. § 28-68-119 (Repl. 2012). It also argued that there were remaining questions of fact about the power of attorney that required fact-finding by a jury.

4

The circuit court found that the arbitration agreement lacked mutuality of agreement and competent parties. The circuit court found that Cherie had signed the arbitration agreement under a power of attorney, but Cherie *alone* could not bind her father. The power-of-attorney document specifically and unambiguously stated that Cherie and Anthony were authorized to act on their father's behalf only if both Cherie and Anthony acted jointly with the consent of one another. The circuit court rejected the documentation from 2018 because Boone provided no documentation to support the existence of a written revocation concerning Cherie or Anthony or both prior to Roy's admission in 2016. The circuit court rejected the estoppel argument given that there was no case law to support that proposition and rejected any reliance on the statutory list of powers because there was no valid arbitration agreement. The circuit court ruled that no question of fact remained to be tried under the Federal Arbitration Act because whether the arbitration agreement was valid was a question of Arkansas contract law for the court. On appeal, Boone challenges each of the circuit court's rulings.

As stated, the court must construe the power of attorney as written. Here, the power of attorney was required to be exercised jointly by Cherie and Anthony together and with each other's consent. That was clearly missing in the arbitration agreement. The 2018 document signed by Roy did not expressly state that the 2013 power of attorney for Anthony was either revoked in writing or provided to Anthony, and even if it did, Roy's recollection in 2018 or subjective intent must yield to the plain meaning of the words in the 2013 power-of-attorney document. *See Ashton*, *supra*. The same is true for Cherie's 2018 letter. *Id.*

5

Next, Boone argues that by statute, section 28-69-119(c), it was permitted to rely on the validity of the power of attorney that Cherie had and the scope of authority she exercised when she signed the arbitration agreement. The statute recites:

(c) A person that in good faith accepts an acknowledged power of attorney without actual knowledge that the power of attorney is void, invalid, or terminated, that the purported agent's authority is void, invalid, or terminated, or that the agent is exceeding or improperly exercising the agent's authority may rely upon the power of attorney as if the power of attorney were genuine, valid and still in effect, the agent's authority were genuine, valid and still in effect, and the agent had not exceeded and had properly exercised the authority.

This contemplates that Boone had the written and acknowledged 2013 document. There was no question about the validity of the 2013 document. However, the power of attorney explicitly provides in writing that Cherie must act jointly with Anthony's consent; Cherie could not act alone to bind her father to the agreement.

Boone argues that the circuit court wrongly rejected its argument that estoppel should apply to bar Cherie (as one of two agents for Roy) from signing the agreement and then claiming (as the executrix) that the agreement was invalid. Assuming without deciding that estoppel applies, estoppel requires among other things that the nursing home be "ignorant of the facts." Boone, relying on the 2013 power-of-attorney document, was specifically informed that Cherie was required to act jointly and with the consent of her brother. The documents composed in 2018 did not comply with the requirement that any termination be provided in writing to the agent or agents. Thus, estoppel does not apply.

Boone also argues that the circuit court erred by not having a jury trial on the issue of whether the arbitration clause was enforceable, given the contrasting facts demonstrated

by the affidavits that were at odds with the 2018 documents signed by Roy and by Cherie. However, the Federal Arbitration Act permits only the "party alleged to be in default" the right to demand a jury trial on a petition to compel arbitration. *Pines - Progressive Eldercare Servs., Inc. v. Carnahan*, 2024 Ark. App. 138, 686 S.W.3d 524. Here, the party alleged to be in default is Cherie, the administratrix of Roy's estate and acting on behalf of the wrongful death beneficiaries. Cherie did not ask for a jury trial on the motion to compel arbitration, so the circuit court properly proceeded on the merits of the motion. *See id.* This was not the reason that the circuit court rejected Boone's request for a jury trial, but Arkansas appellate courts may still affirm if the lower court reached the right result, albeit for the wrong reason. *See Steinbuch v. Univ. of Ark.*, 2023 Ark. 163, 677 S.W.3d 199.

In summary, Boone failed to carry its burden to establish that there was a valid arbitration agreement in 2016 when the arbitration agreement was executed. Thus, we affirm the denial of its motion to compel arbitration.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Conner & Winters, LLP*, by: *Vicki Bronson*; and *Kutak Rock LLP*, by: *Mark Dossett, Jeff Fletcher*, and *Caleb S. Sugg*, for appellants.

*Ludwig Law Firm, PLC*, by: *Kyle Phillip Ludwig, Kale L. Ludwig*, and *Gene A. Ludwig*, for appellee.